# Erie Railroad Company, Appellant, *v.* The Public Service Commission.

*Public Service Commission — Public Service Company Law — Railroad companies—Grade crossings—Abolition—Change of road by Highway Department, without intervention of Public Service Commission—Costs—Assessments of cost by Public Service Commission—Act of May 31, 1911, P. L. 468.*

Where the State Highway Department, under the provisions of the Act of May 31, 1911, P. L. 468, changed a state highway, thereby avoiding certain grade crossings over the tracks of a railroad company, the Public Service Commission cannot assess against that

railroad company any portion of the cost of relocating such highway, upon the theory that it is apportioning the costs of eliminating a grade crossing in accordance with the provisions of the Public Service Company Law.

The Highway Department having proceeded to relocate the highway prior to the complaint before the commission, in accordance with the powers conferred under the Act of 1911, the Public Service Commission had no jurisdiction to assess the costs for a road so relocated.

The order of the Public Service Commission requiring the railroad company to contribute to the cost of a great state highway, because certain grade crossings are thereby eliminated, is confiscatory and will not be sustained.

A new road laid out by the commission in the elimination of a grade crossing is not necessarily to be a state highway, nor must it be built in accordance with the plans and specifications, which have been determined as requisite for the construction of the great trunk highways of the Commonwealth. Where such a highway is contemplated the railroad company cannot be required to contribute to the expense of such an elaborate construction, and an order that required such contributions is confiscatory.

Argued April 22, 1921.   Appeals, Nos. 10 and 11, March T., 1921, by Erie Railroad Company, from the orders of the Public Service Commission of the Commonwealth of Pennsylvania, Nos. 3233 and 3235, on complaints of the State Highway Department of the Commonwealth of Pennsylvania v. Erie Railroad Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ.   Reversed.

Complaint of State Highway Department as to dangerous character of crossings on State Highway Route No. 196.

The facts are stated in the opinion of the Superior Court.

The commission made the following order:

Two complaints, filed by the State Highway Department, allege that two grade crossings in Richmond Township, Tioga County, where State Highway Route No. 196 crosses the track of the Erie Railroad Company, are dan-

gerous and should be eliminated.  One of the crossings is located about 4,600 feet north of the Lamb's Creek station, and the other about 3,000 feet south of the station, making the two crossings about 7,600 feet apart.

State Highway Route No. 196, known as the Susquehanna Trail, leading northward from Williamsport to New York State, is under reconstruction by the State Highway Department, and at the location of the first crossing the highway as it proceeds northward, adjacent to the railroad track on the east, crosses the same at grade, continuing northward through the village known as Lamb's Creek to the point of the second crossing where it crosses said track again at grade to the east side and then continues northward.

At a former hearing both of these crossings were declared dangerous and their abolition ordered.  The State Highway Department has filed plans, providing for the reconstruction of the highway between the two crossings along the east side of the railroad track.

There is a highway leading from the present highway at Lamb's Creek eastwardly from the village across the track of the respondent company at its station about 3,000 feet north of the southerly crossing.  The plan proposes that the northerly of the two crossings remain open for the convenience of the public residing along the same, they being able to reach the new state highway by using the present grade crossing located at the station of respondent.  The southerly grade crossing will be closed to all except the local traffic; the through traffic being diverted along the relocated highway.

The plans as submitted are satisfactory to the county, township and railroad company.  The estimated cost of constructing and relocated highway in accordance with the plans submitted, excluding land damages and costs of concrete paving, is about $105,000.

The conclusion of the commission is as follows:

That the plans for the elimination of the two crossings complained of, as submitted by the State Highway De-

partment, are approved, and all work necessary to abolish the same will be done by the State Highway Department in accordance therewith.

That the respondent railroad company is assessed and shall pay to the State Highway Department toward the cost of the elimination of the crossings the sum of $40,000.

That the County of Tioga is hereby assessed and shall pay to the State Highway Department toward the cost of the elimination of the crossings the sum of $10,000.

That the Public Service Commission hereby contributes out of the fund appropriated to it for the elimination of grade crossings by the Act approved July 18, 1919, P. L. 1048, the sum of $10,000.

That the Township of Richmond is hereby assessed and shall pay to the State Highway Department toward the cost of the elimination of the crossings the sum of $500.

That the balance of the cost will be paid by the State Highway Department.

The County of Tioga, in addition to the sum of $10,000 to be paid to the State Highway Department, shall pay all damages arising on account of the location of said relocated highway. If there be any such damages, and they cannot be agreed upon, application for their determination may be made to the commission upon the completion of the work.

The several payments herein required to be paid to the State Highway Department shall be made by the respective parties when and as certified to by the Public Service Commission.

### ORDER.

These matters being before the Public Service Commission of the Commonwealth of Pennsylvania upon complaints and answers on file and the commission having by its order dated July 27, 1920, found and determined that the existing crossings at grade at points where State Highway Route No. 196 crosses the tracks

of the Erie Railroad, one about 4,600 feet north and the other about 3,000 feet south of Lamb's Creek station, Richmond Township, Tioga County, are dangerous to the travelling public and the abolition thereof necessary for the safety, accommodation and convenience of the public, and further hearing having been held upon the question of the adoption of plans prepared by the State Highway Department, for the abolition of said crossings and the relocation of said highway, and upon the question of the apportionment of the cost of said improvement, and the commission having on the date hereof made and filed of record a report containing its findings of fact and conclusions thereon together with its order with respect to the apportionment of said improvement and abolition including damages, if any, to the owners of property taken, injured or destroyed in connection therewith, which said report is hereby approved and made part hereof:

Now, to wit, September 14, 1920, it is ordered: That the said two crossings at grade where State Highway Route No. 196 crosses the tracks of the Erie Railroad, one about 4,600 feet north and the other about 3,000 feet south of Lamb's Creek station in Richmond Township, Tioga County, be and the same are hereby abolished in accordance with the plans submitted by the State Highway Department and filed of record, which said plans are hereby approved.

It is further ordered: That the Erie Railroad Company, the County of Tioga and the Township of Richmond severally carry out the findings and determinations of the commission in the manner and according to the terms and conditions set forth in the foregoing report.

It is further ordered: The Public Service Commission of the Commonwealth of Pennsylvania does hereby contribute toward the abolition of said grade crossings out of the fund appropriated to it by Act of July 18, 1919, P. L. 1048, the sum of $10,000.

Respondent appealed.

*Error assigned* was the order of the commission.

*Berne H. Evans,* and with him *Douglass D. Storey* and *Ralph J. Baker,* for appellant.

*Frank M. Hunter,* Counsel, and *John Fox Weiss,* Assistant Counsel, for appellee.

OPINION BY HEAD, J., July 14, 1921:

The complaints filed by the state highway commissioner in his official capacity averred that a certain state highway was twice crossed at grade by the track of the Erie Railroad Company in Richmond Township, Tioga County; that the two crossings were about seven thousand feet apart; that they were dangerous and should be abolished. Upon notice of the complaints the railroad company filed a formal answer denying that the crossings were dangerous or that there was any real necessity for their abolition. A brief hearing followed at which there appeared before the commission one of the engineers of the State Highway Department. He described the locations of the crossings and testified: "The State Highway Department proposes, in order to remove the travel from those crossings, to relocate the line (of the highway) to the east side of the railroad— build an entirely new highway." Further on in his testimony, in answer to a question as to the extent of the travel on this highway, he said: "At the present time it isn't very heavy. It is though on the trunk line leading from New York State directly to Williamsport." He gave it as his opinion that the more northerly of the two crossings was the more dangerous and could be entirely eliminated without seriously affecting the convenience of the local community, but that as to the southerly of the two crossings, local conditions would require that it remain open. He testified that the entire cost of the execution of the plan of the State Highway Department for eliminating this crossing would be $178,000 exclu-

sive of the cost of the right-of-way for the relocated high-
way and any consequential damages that might result
from such relocation. A witness for the railroad com-
pany testified briefly as to the train movements over
these crossings and the extent of the highway travel
thereon. His charts show that during an entire period
of twenty-four hours seven trains moved over these
crossings. On one of the days covered by the sheets
offered in evidence—and it was an average one—there
passed on the highway over one of these crossings fifty-
six pedestrians, fifty-five automobiles, forty horses and
riders and three bicycles. This was the whole of the
evidence taken at the first hearing. On July 27, 1920,
an order was made by the commission "That the two
grade crossings situate in Richmond Township, Tioga
County, etc., be and the same are hereby abolished." It
was further ordered that the township and the county
be made respondents in the complaints and a further
hearing was directed on the question of the adoption of
the plans of the Highway Department and the apportion-
ment of the costs and expenses of the abolition and re-
construction.

At the second hearing on August the 18th the same
highway department engineer again testified, going over
some of the matters as to local conditions of the former
hearing and was then asked: "Q.—What does your
plan (the State Highway Department's plan) contem-
plate as to the method in which these two crossings
should be eliminated? A.—By continuing the highway
on the east side of the track from the southern crossing
to a point about 3,000 feet beyond the northern crossing
where it will join the present highway. Q.—Does that
contemplate abolishing both of these crossings? A.—It
would remove the state highway from both crossings."
The County of Tioga having filed an elaborate answer
setting forth in detail the financial condition of the
county and its inability to contribute any sum towards
the proposed improvement, its county commissioner was

called and at some length explained the condition and prospects of the county treasury.

We have now before us the substance of all of the material testimony produced before the Public Service Commission. There followed a second and final order of the commission on September 14, 1920, and we quote briefly from the report of that date for the purpose of getting clearly before us the action of the commission and the line of reasoning that led to it. "At a former hearing both of these crossings were declared dangerous and their abolition ordered. *The State Highway Department has filed plans providing for the reconstruction of the highway between the two crossings along the east side of the railroad track.* (Italics ours.)......The plan proposes that the northerly of the two crossings be entirely closed and the present highway between the two crossings remain open for the convenience of the public residing along the same, they being able to reach the new state highway by using the present grade crossing located at the station of respondent. The southerly grade crossing will be closed to all except the local traffic; the through traffic being diverted along the relocated highway. The plans as submitted are satisfactory to the county, township and railroad company. The estimated cost of constructing and relocating the highway in accordance with the plans submitted, excluding land damages and the cost of concrete paving, is about $105,000......That the respondent railroad company is assessed and shall pay to the State Highway Department towards the cost of the elimination of the crossing the sum of $40,000." Further assessments against the County of Tioga, the Township of Richmond, the contribution to be made by the Public Service Commission and the assessment of the remaining portion of the cost against the State Highway Department are set forth in the report. The Erie Railroad Company has appealed to this court.

It presses its appeal earnestly on the ground that the result of the order of the commission is to compel the railroad company to contribute a large sum of money towards the building of the state highway when there is no authority in the law to support such an enforced contribution. It urges further that when it is considered that after the work of the state highway is completed, as under the law it should be, there would be little if any necessity to abolish these crossings so sparely used by the public at large, and finally, that if the Public Service Commission determined, according to its best judgment, that the crossings must be abolished, and that would necessitate some change in the local road system, the sum of $40,000 is out of all proportion to any just contribution towards the necessary cost of the abolition of such crossings. Due consideration of these rather serious positions makes it important that we present a few general reflections that may aid us to correctly determine the questions involved.

In 1911 the legislature of Pennsylvania appears to have finally determined it would no longer attempt to expand or develop the then existing system of road making in the Commonwealth. Long years of painful experience had at last brought the conviction that if we were to look forward to a system of highways that could, in time, be developed so as to reasonably meet the necessities of the State and the demands of its people, the foundations of that system must be laid by the State itself. They must needs be as broad as our territory. Their design and the execution of that design must be marked by that unity of purpose and effort which is the attribute of the sovereign and must be supported by a never-failing stream of financial aid, the source of which could only be the taxing power of the Commonwealth. By the Act of May 31, 1911, P. L. 468, the statute itself designated and described two hundred and ninety-six separate trunk routes, each one of which thereafter should become a state highway, to be constructed and

maintained "at the sole expense of the Commonwealth," and to be thereafter under the exclusive authority and control of the State Highway Department which the act created and endowed with extensive power. These are the words in which the legislature insistently, almost jealously, declared its intention that the State and the State alone should have supreme control over each and every one of the trunk lines mentioned: They "shall be known, marked, built, rebuilt, constructed, repaired and maintained by and at the sole expense of the Commonwealth and shall be under the exclusive authority and jurisdiction of the State Highway Department and shall constitute a system of state highways." Ample authority was given to that department to make local changes in these routes wherever a study of the surrounding conditions would make such relocation advantageous to the traveling public. When a portion of a state highway was thus relocated, the new location was the state highway and what had theretofore been the bed of the traveled way would be left to lapse into conditions created by general road laws or such as controlled in the local affairs in that particular territory.

In 1913 another marked advance was made in the policy of the State and the administration of its affairs by the creation of a Public Service Commission by the Act of July 26, P. L. 1374. The broad purpose of the creation of that commission and the conferring upon it of very wide and unusual powers was to regulate the formation of new and the operation of all public service companies doing business within the Commonwealth. It is quite clear there was no legislative intent to confuse the powers of these two great departments nor to make one dependent on the other, save and save only where a highway was, or was to be crossed at grade by, or was to be carried over or under the tracks or facilities of a public service company. Within its own proper sphere each was the state itself. The Public Service Commission, in section 12, of article V, of the Act of

1913, which was afterwards amended by the Act of July 17, 1917, P. L. 1025, was given the power, upon proper showing, to order any existing crossing to be relocated, altered or abolished, according to plans and specifications to be approved by it, and upon just and reasonable terms affecting public service companies or municipalities that would be benefited by its action. But if the highway department wisely chose to relocate a portion of the legislative route so as to secure a better road bed, "to remove the travel from grade crossings, or the highway from the crossings,"—as the department engineer expressed it—the power to carry out such plan was complete without either aid or interference from the Public Service Commission. With these general considerations in mind we return to the questions immediately involved in this appeal.

1. The two orders of the Public Service Commission read together leave some doubt as to whether they actually abolished one grade crossing or two. It is of the utmost importance to the appellant railroad company to have precise information on this point. That both crossings were abolished by the first order is clear. The second order, following the suggestion advanced by the highway engineer in his testimony, seems to leave it uncertain whether or not the second of the two crossings was to be closed only to through travel and left open for local travel. This question can be easily disposed of when the commission makes its further report.

2. No one denies the power of the commission to abolish either or both of the crossings referred to in the complaint. Nor is it questioned that if the commission determined to abolish both crossings, and that act should necessitate some readjustment of the local road system to avoid undue inconvenience to the local travel, the commission may make such change in that local system of roads even to the laying out of a new one. But it ought to be clear that the new road to be laid out by the commission under such circumstances, is not to be a state

highway nor to be built in accordance with the plans and specifications that have been determined on in the construction of the great trunk highways of the Commonwealth. If without regard to the great state highway that is being constructed by the Commonwealth, the commission had fixed the cost of a necessary connecting road in Tioga County on the basis and at the sum adopted in this report, it would not take much effort to convince any court that such action was unreasonable. Having examined with great care both reports of the commission and all of the evidence in the record before us, we are forced to the conclusion that as that record now stands it furnishes no legal warrant for taking $40,000 out of the treasury of the appellant. The cost sheet presented by the highway department engineer—and this was the only evidence on the subject—had for its first item almost 40,000 cubic yards of excavation and 30,000 yards of embankment, the estimated cost of which was more than $71,000. Then followed items for reinforced concrete pipe, vitrified tile drains, culverts, etc., which seem to us to point, with much force, to the conclusion that the Public Service Commission was not considering the laying out of a small portion of a public road in Tioga County, made necessary by the abolition of a crossing, but was considering the cost of building a portion of the great state highway commonly known as the Susquehanna Trail, being route No. 196, in the Act of 1911. If its action were intended to compel this appellant, the County of Tioga and the Township of Richmond, to pay large sums towards the expense of building the state highway, such action was without authority of law and would amount to a taking of the property of this appellant without due process. In other words, it would be confiscatory.

3. We are inclined to think the apparently inadequate consideration given to these questions by the commission results from the mistake of fact indicated in the following sentence taken from the report: "The plans as

submitted are satisfactory to the county, township and railroad company." The railroad company filed its formal answer denying that the grade crossings were dangerous within the sense of the statute or that their abolition was required by any proper consideration of the public safety. They had offered before the commission brief but important evidence to show that the railroad operated but few trains over these crossings, some of them in the late hours of the night; and that other travel over them on the highways was numerically small, and the company has since taken and pressed this appeal. If the commission was misled by the apparent attitude of the railroad company or its counsel, it is but due they should have an opportunity to reconsider the action taken in the light of the questions really involved.

We have therefore determined to set aside the order of the commission appealed from and remit the record to that body for such further consideration along the lines set out by this opinion as they may deem adequate for a just and proper determination of the questions raised by the complaint and answer. It is so ordered.