## Somerset County, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued April 28, 1938.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker and Rhodes, JJ.

*Charles H. Ealy,* with him *James B. Landis,* County Solicitor, for appellant.

*Samuel Graff Miller,* with him *Edward Knuff,* for appellee.

*Forrest Mercer,* with him *Charles J. Margiotti,* Attorney General, and *George W. Keitel,* Assistant Deputy Attorney General, for intervening appellee.

OPINION BY PARKER, J., September 28, 1938:

This is an appeal by the County of Somerset from an order of the Pennsylvania Public Utility Commission directing that the county pay certain damages for property taken, injured, or destroyed, and making the county responsible for the vacation and removal or demolition of nonutility structures including occupied dwellings located upon properties appropriated, in the relocation and improvement of a portion of the Lincoln Highway (Route No. 119), the abolition of two grade crossings of a railroad, and the construction of one overgrade crossing, in the vicinity of the borough of Stoyestown in that county.

The county contends, first, that the undertaking is not a grade crossing elimination project but an ordinary highway construction and that, under the circumstances, the county is not liable for any part of the damages occasioned by the taking of property; second,

that if this be not so and the commission has authority in the premises, it might find that the construction of a new bridge over the railroad is necessary or proper for the service, accommodation, convenience, or safety of the public and issue its certificate approving the same, thereby permitting the Department of Highways to build the road under the Road Law, but should not order the construction of the road; and, finally, that the county has not in any event such concern or interest in that part of the project of which the Public Utility Commission may have jurisdiction as would warrant the placing of any part of the cost of the improvement on the county.

The controversy is, in fact, between the county of Somerset and the Department of Highways as to the legality of the assessment made against the county, but this involves a determination of the respective jurisdictions of the Department of Highways and the Pennsylvania Public Utility Commission. The facts necessary to an understanding and solution of the controversy are shown by the application of the Department of Highways to the Public Service Commission (now Public Utility Commission), asking for a certificate evidencing the commission's approval of the abolition of two grade crossings, the construction of one new overhead crossing, and the allocation of the costs and expenses incident thereto, and by the testimony of an engineer produced by the petitioner at the hearing held by the commission.

That petition set forth that the Department of Highways, by virtue of the provisions of an Act of Assembly approved May 31, 1911, P. L. 468, and its supplements and amendments, proposed to relocate and improve a section of State Highway Route No. 119 in Somerset County (it appeared from the testimony that the project was about five miles in length); that that portion of Route No. 119 passed through Stoyestown and was

crossed at grade by a single track of the Baltimore & Ohio Railroad Company at a point about 2,800 feet east of the borough; that a township highway leading southeasterly from the borough was crossed at grade by two tracks of that railroad company at a point 3,400 feet southeast of the borough; that it was proposed to abolish both of said crossings and to construct one crossing above grade as a substitute therefor at a point about 1,800 feet southeast of that borough; and that in the execution of that plan it was proposed to relocate the road in a position south of the old road for a distance of two miles. There were attached to the petition plans showing the routes and grades of the old road and of the new road as it was proposed to be established by the highway department. The petition asked for a certificate of public convenience and for an allocation of the costs and expenses incident thereto.

When the petition was presented to the commission and a hearing was had, the highway department suggested that the Public Utility Commission should take jurisdiction, direct the construction, and allocate the costs of a portion of the highway two miles in length extending from a point west of Stoyestown to a point east of that borough, being the points at which the proposed road departed from the old road.

The entire five miles was to be constructed in cooperation with the federal government at an estimated cost of $468,441.66, exclusive of property damage, under a plan whereby one-half of the cost of reconstruction, except payment of damages to property owners, was to be paid by the federal government and one-half by the state. In addition, the federal government proposed to pay the entire cost of the relocation and construction of the crossing and 1,500 feet of the approaches on each side of the tracks of the railroad company, exclusive of property damages. The rules of the Bureau of Public Roads of the United States Depart-

ment of Agriculture provided that, in assuming the entire cost of grade crossing eliminations, the approaches should not exceed 1,500 feet on each side of the tracks. It appeared from the testimony that the Lincoln Highway in the vicinity of Stoyestown, following the old wagon road, was a succession of steep grades and sharp curves. The road was eighteen feet in width with macadam surface badly worn. It crossed a narrow bridge of old steel construction with wooden floors and a new bridge was needed. The traveling public and pedestrians were subjected to great hazards by reason of the sharp curves, steep grades, and dangerous intersections on the road. The old road passed through the borough of Stoyestown by a sinuous course that interfered with the smooth operation of through traffic. The engineer representing the Department of Highways made it clear that the department would not be justified in spending money for resurfacing the road in its former location on account of the curves, grades, dangerous intersections, and the congestion of traffic. In other words, it was apparent that the elimination of the grade crossings was incident to an extensive, necessary and worthwhile improvement of an important artery in the public road system of the state.

The new plans provided for underpassing of two minor state highways near Stoyestown, for the construction of three ramps for connections with the main road, and for the building of eight connecting roads and five bridges made necessary by the main improvement. The new location took part of the right of way of the Bell Telephone Company and American Telephone & Telegraph Company and necessitated the removal of their pole lines and the acquisition of new rights of way.

The project was approved by the Public Utility Commission as prayed for and was directed to be made, the order providing, inter alia, as follows: "That the County

of Somerset be responsible for the vacation and the relocation, removal or demolition of non-utility structures, including occupied dwellings located upon property herein appropriated. Any reasonable costs actually incurred by such county in connection with such vacation, relocation, removal or demolition shall be paid and borne by the same parties and in the same manner and proportion as herein provided for the payment of compensation for damages to the owners of property taken, injured or destroyed by reason of the improvement ...... That the County of Somerset pay all compensation for damages due to the owners of property, exclusive of the respondent railroad company, for property taken, injured or destroyed in the execution of the improvement." The payments to be made by the county were to be offset in part by payments to the county by the Baltimore & Ohio Railroad Company of $5,000, by the borough of Stoyestown of $1,000, and by the Department of Highways for the state of $6,000. There was no satisfactory evidence as to the amount of the damages for which the county would be liable and no findings of amounts of property damages were made by the commission. The engineer, who stated that he was not familiar with all the properties, made a rough estimate of $30,000 as the probable damages, in addition to such amounts as would be due to the telephone companies, while on argument it was suggested by the county that the damages might reach $75,000.

By the Act of May 31, 1911, P. L. 468, a large number of the important thoroughfares of the Commonwealth were placed under the authority and control of the Department of Highways to be maintained "at the expense of the Commonwealth." Various supplements and amendments to the original act and additional acts have added to the number of such thoroughfares. The road in question is such a state highway. The original act, with various amendments and supplements, has

given ample authority to that department to change the routes of state highways within certain limits and make relocations which are of advantage to the traveling public. By the 16th section of the Highway Act of 1911, as amended finally by the Acts of July 12, 1935, P. L. 946, and June 21, 1937, P. L. 1951, where a change is made by the highway department in the location of a road, the counties in which the roads are located are not liable for damages except where the change has been with the consent to or approval of the change of location by the county commissioners.

However, by the Public Service Company Law of July 26, 1913, P. L. 1374, Art. V, §12 (66 PS §571), as finally amended by Act of May 28, 1937, P. L. 1053, §409 (66 PS §1179), the Public Service Commission (now the Pennsylvania Public Utility Commission) was vested with exclusive power over the relocation or abolition of crossings of the facilities of any public utility by a public highway. It therefore becomes important here to examine the exact scope of the authority or power of the commission in such cases.

It was provided by the Amendment of 1937 that the commission, upon complaint or upon its own motion, "shall have exclusive power after hearing ...... to order any such crossing heretofore or hereafter constructed to be relocated or altered, or to be abolished upon such reasonable terms and conditions as shall be prescribed by the commission. In determining the plans and specifications for any such crossing, the commission may lay out, establish, and open such new highways as, in its opinion, may be necessary to connect such crossing with any existing highway, or make such crossing more available to public use; and may abandon or vacate such highways or portions of highways as, in the opinon of the commission, may be rendered unnecessary for public use by the construction, relocation, or abandonment of any of such crossings. The commission may

order the work of construction, relocation, alteration, protection, or abolition of any crossing aforesaid to be performed in whole or in part by any public utility or municipal corporation concerned or by the Commonwealth." It was also provided (66 PS §1181) that the compensation for damages "which the owners of adjacent property taken, injured, or destroyed may sustain in the construction, relocation, alteration, protection, or abolition of any crossing under the provisions of this act" shall be ascertained and determined by the commission. "Such compensation, as well as the expense of such construction, relocation, alteration, protection, or abolition of any crossing, shall be borne and paid, as hereinafter provided, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties."

That a certificate of public convenience evidencing the approval by the commission for the abolition of the two crossings in question and the erection of a new crossing of the highway above the grade of the railroad was necessary is not now open to argument. In that respect the commission had some powers that were exclusive and the assumption of jurisdiction over at least a part of the project is amply supported by the evidence: *Ligonier Val. R. R. Co. v. P. S. C.*, 83 Pa. Superior Ct. 502. In fact, it is conceded by the appellant that there were necessary duties to be performed here that were within the exclusive jurisdiction of the commission.

The powers of the commission did not end with an approval of the project for, as we have seen, further power in such cases is granted by the statute. The commission has the *exclusive* power to appropriate property for any such crossing and prescribe the points

at which, and the manner in which, such crossing shall be constructed, relocated, or abolished and how it shall be maintained. In determining plans and specifications for the crossings the "commission may lay out, establish, and open such new highways as, in its opinion, may be necessary to connect such crossing with any existing highway, or make such crossing more available to public use," and it may abandon or vacate highways rendered unnecessary for public use by the change. The real question is therefore one of extent, rather than existence, of authority.

We find no merit in the argument of appellant that the county had no such "concern" or "interest" in the project as would warrant the commission in placing some part of the cost of the improvement on the county. Undoubtedly a county is such a municipality as may be "concerned" or "interested" in abolishing a grade crossing and providing a new crossing above grade as a substitute for the one abandoned (*Lancaster County v. P. S. C.*, 77 Pa. Superior Ct. 495, 503) just as a township may have such interest or concern: *Paradise Twp. v. P. S. C.*, 75 Pa. Superior Ct. 208; *Salem Twp. v. P. S. C.*, 76 Pa. Superior Ct. 374, 377. As bearing on the actual interest shown, there was evidence to support the conclusion of the commission that the improvement was of interest and concern to the county. The relocation of the crossing resulted in a substantial local improvement and the benefits to the residents of the county were different from and in excess of those enjoyed by other users of the crossing.

This brings us to the real question in this appeal which is whether the commission did not exceed its powers in embracing in its order every phase of the construction of two miles of state highway and in that connection, as affecting the present controversy, placing on the county the larger part of the cost arising on account of damages payable to property owners scattered over a stretch of two miles and on side or con-

necting roads changed and altered as a part of the general improvement. We here again call attention to the fact that in the improvement of state highways under the state highway law it is not now the policy of the legislature to place upon counties damages for the taking of private property except by the consent of the county commissioners, while under the Public Utility Law, in a proceeding for the abolition or relocation of a railroad crossing, the commission may place a portion of the cost of the change upon the county benefited by such change, in which case the amount that may be charged to the counties is not in any respect measured by or limited to damages for the taking of private property. The commission and the highway department apparently assumed that in determining the scope of the commission's authority the only item for consideration was the points at which the old and new roads separated and that all of the project within those limits was the exclusive concern of the commission. We are of the opinion that there were other undisputed facts proved by the Department of Highways that the commission should have considered, and that when those facts are taken into account it is clear that the commission exceeded its powers and did not allocate the cost on a proper basis.

The problem here involved bears a strong resemblance to that in *Erie R. R. Co. v. P. S. C.*, 77 Pa. Superior Ct. 196. There the highway department undertook the improvement of something over 10,000 feet of a state highway on which were two grade crossings. In providing a new plan the road was moved to one side of the tracks so that through travelers were not compelled to pass over either crossing. From the opinion in that case (p. 206), we find that the commission approved the plan and directed one crossing to be abandoned. There is some doubt as to the order of the commission as to the other crossing. The sum of $40,000

was placed on the railroad company as its share of the cost of the elimination of a grade crossing. The order was reversed by this court and the record remitted for further consideration. The commission was directed to take into consideration various matters which it had disregarded. We there said: "No one denies the power of the commission to abolish either or both of the crossings referred to in the complaint. Nor is it questioned that if the commission determined to abolish both crossings, and that act should necessitate some readjustment of the local road system to avoid undue inconvenience to the local travel, the commission may make such change in that local system of roads even to the laying out of a new one. But it ought to be clear that the new road to be laid out by the commission under such circumstances, is not to be a state highway nor to be built in accordance with the plans and specifications that have been determined on in the construction of the great trunk highways of the Commonwealth. If without regard to the great state highway that is being constructed by the Commonwealth, the commission had fixed the cost of a necessary connecting road in Tioga County on the basis and at the sum adopted in this report, it would not take much effort to convince any court that such action was unreasonable."

In this appeal by Somerset County, the commission has ordered the elimination of two grade crossings and the substitution of one new overhead crossing in place thereof, but the principles involved are the same as in the Erie Railroad Company case. It is most evident from an examination of the petition, the testimony supplied by the highway department, and the very complete blue prints submitted, that the project considered as a whole was primarily an important and worthwhile improvement in one of the main highways of the Commonwealth. Any doubt on this score is removed by a reference to the statement at the beginning of the petition by the Department of Highways to the Public

Utility Commission where it was averred that "the Department of Highways, by virtue of the provisions of an Act of Assembly approved May 31, 1911, P. L. 468, and its supplements and amendments proposes to relocate and improve a section of State Highway Route No. 119 between Buckstown and Jennerstown, Somerset County."

The testimony of the highway engineer in this case makes clear the fact that the road as it formerly existed came far short of furnishing adequate and safe accommodations for the traveling public, entirely independent of the presence of a grade crossing. In fact, only a limited number of freight trains passed over this crossing daily. The macadam surface of the road was worn out and the curves were many and dangerous. The grades were excessive and travel was restricted by a course through the streets of the borough of Stoyestown. To remove these objections the new road was so laid out that it barely touched a portion of the borough and side roads with ramps and passes were relocated for the purpose of giving the residents of the borough access to the new main highway and a passageway thereunder. The fact that the federal government contributed one-half the cost of the road construction and the entire cost of the grade crossing elimination, with the exception of property damages, shows that this project was a plan for the improvement of a highway which was an important artery in the roads of the nation and that the grade crossing elimination and the change in the highway system were separate propositions although proper for consideration at one time. As was said by Judge (now President Judge) KELLER in *Penna. Railroad Co. v. P. S. C.*, 118 Pa. Superior Ct. 380, 391, 179 A. 850, it is not within the province of the commission "to include a state highway relocation, in the plan of eliminating a grade crossing and saddle the cost of the same on the railroad and

other parties interested in abolishing the crossing."

That it was necessary to secure the consent of the commission to the changes made with respect to the railroad crossings and that the commission, after hearing, had exclusive jurisdiction to relocate the crossings, to determine the plans and specifications, to lay out roads necessary to make the crossing more available to public use, and to abandon roads rendered unnecessary is not open to argument. It is equally clear that that agency was authorized to condemn property and allocate the expense incident to the relocation of the railroad crossing, including specifically the power at its discretion to place on the county of Somerset a portion of the cost of eliminating the old crossings and of constructing the new crossing not at grade.

The commission erred in attempting to exercise powers not committed to that body by the Public Utility Law. It failed to give proper consideration to a determination of the point at which this undertaking ceased to materially concern the relocation of the grade crossings and to take into account the admitted facts showing that the project as a whole and the major portion of its parts, even within a limit of two miles, was not incident to the grade crossing elimination but was clearly a relocation of a state highway where many of the changes were being made for reasons entirely divorced from the relocation of the crossings.

If we adopted the reasoning set forth in the commissions brief, we would be forced to hold that merely because a highway crossed the facilities of a public utility and an improvement of the highway was deemed advisable, the jurisdiction of the Department of Highways would be entirely ousted and the improvement of the road committed to the exclusive control of the Public Utility Commission without regard to the part which the change in the crossing had in the project. The legislature intended to place matters pertaining to the

state highway system, its construction and maintenance, under the authority of the Department of Highways, subject to the limitation that where any highway, state, county, or township, is crossed by the facilities of a public utility, then matters pertaining to the crossing are subject to the exclusive jurisdiction of the Public Utility Commission. It certainly was not intended by this limitation to take from the Department of Highways all jurisdiction in the relocation of state roads and commit that control to another agency. Primarily, it is with the crossing that the commission is concerned. In determining any conflicts between these two agencies of the legislature, the jurisdiction of the Department of Highways is not to be limited by some remote interest that users of the crossing have in all the roads they might travel in reaching a crossing, but only by a substantial and closely related interest.

It is necessary to return the record to the commission that it may first determine the extent to which the improvement is reasonably related to the relocation of the railroad crossing, take jurisdiction accordingly, and then limit its allocation of the expenses incident to the changes to such matters as immediately concern the elimination of the two grade crossings and the relocation of the new crossing.

The order of the commission appealed from is reversed and the record is remitted to that body for such further consideration in harmony with this opinion as they may deem adequate for the just and proper determination of the questions raised.