Department of Highways, Appellant, *v.*
Pennsylvania Public Utility
Commission.

Argued March 12, 1962. Before RHODES, P. J., ER-VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Nelson M. Galloway,* Assistant Attorney General, with him *John R. Rezzolla, Jr.,* Chief Counsel, *Alan Miles Ruben,* Deputy Attorney General, and *David Stahl,* Attorney General, for Department of Highways, appellant.

*Anthony L. Marino,* Assistant Counsel, with him *Joseph I. Lewis,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*E. Everett Mather,* with him *John B. King,* for intervening appellee.

*Robert P. Garbarino,* with him *Vincent P. McDevitt* and *Samuel Graff Miller,* for electric company under Rule 46.

*Walter T. Wardzinski* and *Thomas J. Munsch, Jr.,* for electric company under Rule 46.

*Harris J. Latta, Jr.,* with him *Windsor F. Cousins,* for railroad company under Rule 46.

OPINION BY RHODES, P. J., June 12, 1962:

In this appeal the Department of Highways of the Commonwealth of Pennsylvania questions the exclusive power of the Pennsylvania Public Utility Commission to direct the construction of a bridge over a highway-rail crossing in such a manner as to permit The Bell Telephone Company to relocate and install its facilities in the structure of the bridge constructed under the jurisdiction, supervision, and authority of the commission as set out in section 409 of the Public Utility Law of May 28, 1937, P. L. 1053, as amended by the Act of September 28, 1938, Sp. Sess., P. L. 44, §1, and by the Act of May 25, 1945, P. L. 1012, §1, 66 PS §1179. The department asserts that the commission's jurisdiction, broad as it is under section 409 of the Public Utility Law in highway-rail crossing proceedings, does not include the power to approve the occupancy of the crossing by telephone and gas utilities, which power the department says the Legislature has given to it. The department does not oppose the application of the United

Gas Improvement Company to install a gas main on the bridge as it had received a license from the department.

Pursuant to a petition by the department, the commission entered an order on February 19, 1958, for the altering of an existing highway-rail crossing by the building of a new bridge on a portion of State Highway Route 36185 at a point in East Lampeter Township, Lancaster County, where it crosses over four tracks of The Pennsylvania Railroad Company. The commission by its order allocated all costs against the department except the cost to The Pennsylvania Railroad Company of altering and relocating its facilities, and further provided, in accordance with the law, as set forth in *Delaware River Port Authority v. Pennsylvania Public Utility Commission,* 393 Pa. 639, 145 A. 2d 172, that the cost of removal and relocation of the facilities of any public utility other than The Pennsylvania Railroad Company, located within the limits of any highway which may be required as incidental to the execution of the improvement, be made by the public utility at its sole cost and expense. The completion date of the crossing improvement, April 1, 1960, was later extended to December 31, 1961, by the commission. The detail plans under the commission's original order provided for a bridge consisting of reinforced concrete roadway and sidewalks which were to contain 6-inch longitudinal holes, called sono tubes, intended to reduce the weight of the concrete. On June 30, 1960, Bell filed its petition with the commission requesting the commission to change its order for the alteration and construction of the crossing bridge by substituting two 3½-inch pipes for two of the 6 sono tubes in the 5-foot sidewalk, and authorizing Bell to place the telephone cables in the pipes or conduits to replace the existing line of poles carrying a telephone cable across the bridge. Bell agreed to assume all costs involved in

this request, including the expense of maintenance. The commission entered an order making Bell a party to the proceedings and directing that hearings be held to give Bell an opportunity to justify its request. At a hearing held on September 6, 1960, a Bell engineer explained the needs of Bell regarding construction of the bridge. Counsel for the department cross-examined this witness at length in an effort to show that the department was authorized to issue a permit to Bell for relocation and installation of Bell's facilities on the new highway-rail crossing bridge. United Gas Improvement Company also appeared and requested authorization from the commission to place an 8-inch steel gas pipe in a sidewalk. It appeared that UGI had previously applied to the department for a permit covering a proposed installation on the bridge. The department then filed petitions for reversal of certain rulings by the examiner and for further hearing. An additional hearing was held on November 2, 1960, at which an independent bridge design engineer testified that Bell's proposal did not adversely affect the bridge. The department offered no evidence to the contrary but contended strenuously that the utilities involved should have applied to it for permits. There was evidence to show that the bridge contractor might place the concrete sections containing sono tubes in such a way as to create continuous tubes the length of the bridge or separately with spaces between the ends which, when filled with concrete, would render the sono tubes useless to Bell. At the department's request the commission, on November 7, 1960, granted oral argument on the petitions of Bell and UGI to be held on December 20, 1960.

On November 10, 1960, Bell wrote a letter-petition to the commission setting forth the fact that the bridge was being pushed to completion and could be constructed, in the contractor's discretion, in such a way as to prevent Bell from using the sono tubes as con-

duits for its cable and requesting the commission to enter a preliminary order directing that at least two tubes be placed continuously throughout the length of the bridge so that these facilities would be in existence in the event the commission finally determined it had jurisdiction after oral argument. Bell agreed to formally amend its petition and to use the existing 6-inch sono tubes rather than the 3½-inch ducts it had earlier proposed. The department, on November 16, 1960, wrote the commission opposing Bell's request. On November 21, 1960, the commission reviewed the prior proceedings, noted the necessity of action to prevent possible waste, and entered an order that the department place the sidewalks, the sono tubes, and the 8-inch steel casing to be furnished by UGI on the bridge "in such a manner as will allow installation of the Bell and UGI facilities as nearly as practicable in accordance with the final proposals of Bell and UGI as shown in the record." In its order of November 21, 1960, the commission stated that the department's objections to the commission's jurisdiction would be considered in its final order to be promulgated in due course. On December 8, 1960, the department filed an answer to Bell's letter-petition of November 10, 1960, asserting that the informal procedure adopted by Bell and the commission was highly irregular and deprived the department of due process of law. Briefs were filed by the parties and oral argument heard on January 24, 1961. On February 27, 1961, the commission issued its final order supplementing its original relocation order of February 15, 1958, disposing of the department's contentions and authorizing Bell and UGI to install and maintain their lines in the bridge at their own expense according to plans to be submitted to and approved by the commission.

The appeal to this Court is by the department from the commission's order of February 27, 1961. The

question, limited to a highway-rail crossing bridge, is whether the commission had jurisdiction and exclusive power to issue the order of February 27, 1961. The department does not question the jurisdiction of the commission as to highway-rail crossings, but it contests the scope of the commission's power as to said crossings to approve the occupancy by the facilities of the non-rail utilities.

We start with the premise that "the commission's authority must either arise from the express words of the statute or by strong and necessary implication therefrom." *Delaware River Port Authority v. Pennsylvania Public Utility Commission,* supra, 393 Pa. 639, 643, 145 A. 2d 172. In that case it was held that the power granted to the commission in sections 409 and 411 of the Public Utility Law, 66 PS §§1179, 1181, extensive as it was, did not include the authority to allocate to the Commonwealth the cost of relocating non-transportation utility facilities as an incident to a highway-rail crossing construction, relocation, or abolition. See, also, *Department of Highways v. Pennsylvania Public Utility Commission,* 394 Pa. 31, 33, 145 A. 2d 538. These decisions were reached, however, because the Court found that the statutes involved did not reveal any legislative intent to change the well-settled policy of the law that non-transportation public utilities must bear the expense of relocating their facilities when the relocation is brought about by governmental exercise of the police power such as in construction, relocation, alteration, protection, or abolition of a highway-rail crossing.[1] In brief, this appeal is con-

---

[1] In *Delaware River Port Authority v. Pennsylvania Public Utility Commission,* 393 Pa. 639, 645, 145 A. 2d 172, 175, our Supreme Court said:

"Historically, in Pennsylvania, non-transportation public utilities have been permitted to occupy highway rights-of-way free of

cerned with the commission's exclusive power over the design, construction, and maintenance of highway-rail crossings, including the use thereof by non-rail utilities involved. The commission in its order stated: The commission "is given the exclusive power and duty to control the planning, design, construction, protection, maintenance, alteration, operation, and abolition of such crossings, at grade, and above and below grade; it is given the exclusive power and duty to appropriate property necessary for such crossings, and to allocate the costs and expenses of all of the foregoing; it is given the exclusive right to exercise the Commonwealth's police power with respect to such crossings; and it is given the exclusive custody and control of such crossing facilities constructed and acquired as aforesaid." The department argues, however, that the commission cannot properly consider utility applications similar to those under consideration unless the utility first procures a "permit" or "license" from the department. But see sections 901 and 902 of the Public Utility Law, 66 PS §§1341, 1342.[2]

A review of the relevant statutes and the decisions thereunder show that the Legislature has given the commission exclusive power here asserted at least within the area of commission jurisdiction in highway-rail

cost, subject and subordinate to the State's police power to control and regulate the highways for the benefit of the public. . . . Such utilities obtain no property rights in the highway and can be ordered by a competent state or municipal agency to relocate their facilities at their own expense . . . The reason obviously is that since these utilities occupy the highways free of cost they should not be entitled to compensation if they are forced to relocate their facilities because of highway improvements."

[2] Section 901, 66 PS §1341, provides: "The commission shall have general administrative power and authority to supervise and regulate all public utilities doing business within this Commonwealth."

crossing proceedings under section 409 of the Public Utility Law, as amended, 66 PS §1179.

Under section 409(a) no highway-rail crossing bridge may be constructed, altered, relocated, or abolished without commission approval. Section 409(b) gives the commission "exclusive power . . . to determine and prescribe . . . the points at which, and the manner in which, such crossing may be constructed, altered, relocated or abolished, and the manner and conditions in or under which such crossings shall be maintained, operated, and protected to effectuate the prevention of accidents and the promotion of the safety of the public." Section 409(c) states that the commission "may order the work of construction, relocation, alteration, protection, or abolition of any crossing aforesaid to be performed in whole or in part by any public utility or municipal corporation concerned or by the Commonwealth." The exclusive power in the commission to authorize the construction, relocation, alteration, protection, or abolition of highway-rail crossings, and to allocate costs as directed has been the law and public policy of the state since the enactment of the original Public Service Company Law of July 26, 1913, P. L. 1374, Art. V, §12. *Wilkes-Barre v. Pennsylvania Public Utility Commission*, 164 Pa. Superior Ct. 210, 214, 63 A. 2d 452. See, also, *Department of Highways v. Pennsylvania Public Utility Commission*, 179 Pa. Superior Ct. 376, 386, 116 A. 2d 855; *Department of Highways v. Pennsylvania Public Utility Commission*, 185 Pa. Superior Ct. 418, 424, 138 A. 2d 143.

Appellant relies upon the State Highway Law of June 1, 1945, P. L. 1242, §411, 36 PS §670-411 et seq., which, in general, gives the department jurisdiction and power to license gas, electric, telephone and water utilities to install and maintain their facilities in state highways. Undoubtedly, under this Law, the department has authority to issue permits and prescribe "con-

ditions, restrictions, and regulations" under which gas, electric, telephone, and water utilities may occupy state highways. Cf. *Philadelphia Suburban Water Company v. Pennsylvania Public Utility Commission,* 168 Pa. Superior Ct. 360, 365, 78 A. 2d 46. However, as between the department and the commission in highway-rail crossing proceedings under section 409 the statutory power is sufficiently explicit and broad to render commission jurisdiction exclusive within these limits and to authorize the order entered in these proceedings.[3] As stated in *Department of Highways v. Pennsylvania Public Utility Commission,* 141 Pa. Superior Ct. 376, 380, 386, 14 A. 2d 611, 612, 615, quoting from earlier decisions: " 'The legislature intended to place matters pertaining to the state highway system, its construction and maintenance, under the authority of the Department of Highways, subject to the limitation that where any highway, state, county, or township, is crossed by the facilities of a public utility, then matters pertaining to the crossing are subject to the exclusive jurisdiction of the Public Utility Commission': Somerset County v. P. U. C., 132 Pa. Superior Ct. 585, 598, 1 A. 2d 806. The powers of the commission are plenary with relation to crossing of railroad tracks by highways and the construction of bridges or viaducts for the elimination of grade crossings of railroads. . . . ' "It is quite clear there was no legislative intent to confuse the powers of these two great departments nor to make one dependent on the other, save and save only where a highway was, or was to be crossed at grade by, or was to be carried over or under the tracks or facili-

---

[3] Section 411 of the State Highway Law contains this significant limitation: "The secretary shall also have authority to issue permits to any public utility company for the occupancy, by the facilities of such company, of any bridge under the control or jurisdiction of the department." 36 PS §670-411.

ties of a public service company. Within its own proper sphere each was the state itself." ' "[4]

Under sections 409, 411, of the Public Utility Law, as amended, 66 PS §§1179, 1181, the commission may compel a utility to remove its facilities from a street vacated incident to a grade crossing abolition. *Philadelphia Suburban Water Company v. Pennsylvania Public Utility Commission,* supra, 168 Pa. Superior Ct. 360, 367, 78 A. 2d 46. Consequently, the commission, under the authority given in the statute, could prescribe the plan of construction under which the utility may occupy the altered grade crossing. In fact, if the commission has exclusive power to prescribe how the highway-rail crossing shall be constructed, it can direct the details of construction so as to provide for occupancy and relocation of the facilities of a utility occupying a highway or street in the area under commission jurisdiction. The greater power includes the lesser.

It is clear that the state has the power here exercised. It is simply a question which agency has been authorized to act by the Legislature in this particular situation. Cf. *Somerset County v. Pennsylvania Public Utility Commission,* 132 Pa. Superior Ct. 585, 599, 1 A. 2d 806. Within the area of commission jurisdiction in highway-rail crossing proceedings under section 409, the police power of the Commonwealth to permit occupancy of public highways by utilities of the type here involved is given exclusively to the commission. Such crossings are under the exclusive jurisdiction of the commission, and on the narrow question before us

---

[4] It is clear that bridges built by order of the commission at highway-rail crossings are not in the same category as bridges built by the department elsewhere on highways. See *Wilkes-Barre v. Pennsylvania Public Utility Commission,* 164 Pa. Superior Ct. 210, 63 A. 2d 452.

cannot be regarded as "State Highways." Cf. *Consho-hocken Borough v. Pennsylvania Public Utility Commission*, 135 Pa. Superior Ct. 295, 306, 5 A. 2d 590; *Com. ex rel. Schnader v. Ritter*, 313 Pa. 526, 530, 169 A. 568. It must be recognized that statutes should be construed, if possible, so as to avoid any conflict between various agencies of the state. The presumption is against a construction resulting in a conflict. Statutory Construction Act of May 28, 1937, P. L. 1019, Art. IV, §52, 46 PS §552; *Cammie v. I. T. E. Circuit Breaker Company*, 151 Pa. Superior Ct. 246, 251, 30 A. 2d 225. The Legislature is presumed not to have intended a result which is absurd or unreasonable. *Department of Highways v. Pennsylvania Public Utility Commission*, 190 Pa. Superior Ct. 1, 8, 151 A. 2d 850. Furthermore, it would reasonably follow that the commission exercising exclusive and plenary power in highway-rail crossing cases and having authority to direct the department as to the manner of construction, and to allocate costs against it should be able to prescribe the construction and alteration of the crossing and the conditions of occupancy thereof by utilities of the type here involved as against the department which occupies the position of a party to the proceedings. To sustain the department's contention here would create an anomalous situation resulting in confusion, conflict, and needless duplication of authority. On the other hand, an interpretation sustaining the commission's exclusive power to direct construction of a crossing bridge and the installation or relocation of the gas and telephone facilities thereon is logical and practicable and will not interfere with the department's general statutory power to license occupancy by such utilities within the area of jurisdiction of the department.

It is our conclusion that the commission had authority to entertain the petitions of Bell and UGI and had the exclusive power to determine what facilities of

such utilities the crossing structure should be designed to carry and the terms and conditions of occupancy and maintenance under which this shall be done; that the structure here involved is a public utility crossing; and that the construction by the department must proceed in accordance with the order of the commission and under its jurisdiction and control.

The powers of the Secretary of Highways to relocate highways generally and to license occupancy by public utilities are not "conflicting or incompatible" with the powers of the commission in regard to alteration of grade crossings under section 409. Cf. *Northern Pipe Line Company Case,* 132 Pa. Superior Ct. 406, 412, 1 A. 2d 526.

There is no irreconcilable conflict between the State Highway Law of 1945 and the Public Utility Law. In any event, in highway-rail crossing proceedings the jurisdiction of the commission on the question here presented is exclusive. *Wilkes-Barre v. Pennsylvania Public Utility Commission,* supra, 164 Pa. Superior Ct. 210, 214, 218, 63 A. 2d 452; *Butler City v. Pennsylvania Public Utility Commission,* 167 Pa. Superior Ct. 463, 75 A. 2d 611.

Furthermore, in so far as there may be any conflict between the State Highway Law and the Public Utility Law, the latter, giving the commission exclusive jurisdiction over highway-rail crossing proceedings prevails. Cf. *Duquesne Light Company v. Upper St. Clair Township,* 377 Pa. 323, 105 A. 2d 287. Appellant relies upon section 514 of The Administrative Code of 1929, 71 PS §194, relative to the licensing by various departments for occupancy by utility service lines, but this provision by its terms applies to "real estate belonging to the Commonwealth" and is not relevant on the question here raised. Section 2801 of The Administrative Code, 71 PS §711, and section 12 of the Public Utility Law, 66 PS §463, indicate that the specific pro-

visions of the Public Utility Law prevail in this instance over The Administrative Code in so far as any conflict may exist.

The final order of the commission attacked by the department is not defective on the ground that due process was not afforded the department or the parties. The original proceeding under the commission's order of February 19, 1958, was formally opened by Bell's petition of June 30, 1960. The department was notified, appeared, and took part in the hearings. The department filed answers to Bell's letter-petition of November 10, 1960, and this was treated as a formal petition. Cf. *Department of Highways v. Pennsylvania Public Utility Commission,* 189 Pa. Superior Ct. 111, 149 A. 2d 552. Briefs were filed and argument had before the final order of February 27, 1961. The facts were not in controversy; the single issue was the exclusive jurisdiction of the commission to prescribe the structure of the bridge alteration and relocation and to provide for the occupancy of the crossing by the non-rail utilities involved. The substance and not the form of the commission action is controlling on the question of whether the commission has entered a final definitive order. *West Penn Power Company v. Pennsylvania Public Utility Commission,* 174 Pa. Superior Ct. 123, 128, 129, 100 A. 2d 110. In the present proceeding, which resulted in the final order of February 27, 1961, from which the department has taken an appeal, we think there was a compliance with the basic requirements of due process relative to notice, opportunity to be heard, and to offer evidence. Cf. *Smith v. Pennsylvania Public Utility Commission,* 192 Pa. Superior Ct. 424, 429, 430, 162 A. 2d 80.

The order of the commission is affirmed.