Department of Highways, Appellant, *v.*
Pennsylvania Public Utility
Commission.

Argued March 12, 1962. Before RHODES, P. J., ER-
VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

*Nelson M. Galloway,* Assistant Attorney General, with him *John R. Rezzolla, Jr.,* Chief Counsel, *Alan Miles Ruben,* Deputy Attorney General, and *David Stahl,* Attorney General, for Department of Highways, appellant.

*Anthony L. Marino,* Assistant Counsel, with him *Joseph I. Lewis,* Chief Counsel, for Pennsylvania Public Utility Commission, appellee.

*E. Everett Mather,* with him *John B. King,* for telephone company, intervening appellee.

*Robert P. Garbarino,* with him *Vincent P. McDevitt* and *Samuel Graff Miller,* for electric company, intervening appellee.

*Walter T. Wardzinski* and *Thomas J. Munsch, Jr.,* for electric company under Rule 46.

*Harris J. Latta, Jr.,* with him *Windsor F. Cousins,* for railroad company under Rule 46.

OPINION BY RHODES, P. J., June 12, 1962:

This appeal by the Department of Highways of the Commonwealth of Pennsylvania from the order of the Pennsylvania Public Utility Commission of August 28, 1961, is controlled by our decision in *Department of Highways v. Pennsylvania Public Utility Commission,* 198 Pa. Superior Ct. 87, 182 A. 2d 267 (No. 9, March Term, 1962). Substantially similar questions are raised on both appeals.

The commission issued an order on August 28, 1961, approving the application of the department of Decem-

ber 4, 1958, for abolition of an existing highway-rail crossing bridge in Bensalem Township, Bucks County, and the construction of a new highway-rail crossing bridge in lieu thereof. The bridge carries Tennis Avenue, a township road, over the four tracks of the New York-Washington line of The Pennsylvania Railroad Company, and was made necessary incident to the construction of the Delaware Expressway in this area.

The Bell Telephone Company of Pennsylvania previously maintained a pole line carrying an aerial cable above the existing bridge, and Philadelphia Electric Company had a four-inch steel low pressure gas main attached to the bridge. In its order of August 28, 1961, the commission, inter alia, directed the department to submit detailed construction plans showing provision for installation of four 4½-inch transit ducts to carry Bell's cable and providing for attachments on the bridge structure to support the four-inch gas main of Philadelphia Electric. Installations by Bell and Philadelphia Electric are to be paid and maintained by the utilities themselves.

Throughout the proceedings the department has asserted its authority to license the telephone, gas, and electric utilities to occupy the highway-rail crossing. The commission order sets forth the situation as follows: "The witness for Department of Highways testified at the September 28, 1960 hearing that before the department will agree to permit facilities of public utility companies on the bridge the involved utility company must agree to assume the cost and sign an occupancy permit: where the highway is not a state highway, as here, the utility must show the department an occupancy permit signed by the proper municipality. Neither The Bell Telephone Company of Pennsylvania nor Philadelphia Electric Company agree to apply to Department of Highways or Bensalem Township for any occupancy permit to install their facilities on any

portion of the improvement over which the Commission has jurisdiction. This is one of the many cases in which the department has attempted to force public utilities seeking to install facilities on a highway-railroad crossing bridge first to obtain an occupancy permit and we have consistently rejected this contention."

In this appeal the department renews its contention that permits for occupancy and installation of facilities of such non-rail utilities on highway-rail crossing sites constructed under the general jurisdiction and on order of the commission must be obtained from the department.

On November 16, 1961, this Court, after argument, refused the department's petition for partial supersedeas of the commission's order of August 28, 1961, that is, in so far as the order required the department to make provision on the new bridge for installation of facilities by Bell and Philadelphia Electric. Subsequently we granted petitions by Bell and Philadelphia Electric to intervene as parties appellee. Following various attempts by Bell and Philadelphia Electric to enforce the commission order relative to provision for installation of their facilities on the bridge, the department, after requesting and securing an extension of time from the commission to January 15, 1962, agreed to file the plans as directed, without prejudice to the department's right of appeal.

The narrow issue presented is governed by our decision at No. 9, March Term, 1962, and what we said there applies equally and fully here. In addition, it may be noted that the road involved in this highway-rail crossing proceeding was a township road in a second class township, and not a state highway. In this connection appellant cites and lays emphasis upon provisions of The Second Class Township Code, Act of May 1, 1933, P. L. 103, Art. XI, §1156, as amended by Act of May 23, 1957, P. L. 189, No. 92, 53 PS §66156,

providing that utility distribution facilities, such as gas pipes, water pipes, electric conduits, telephone, electric light, and power poles may not occupy "any portion of a township road . . . except under . . . permits granted by the State Highway Department for such purpose."

As pointed out in the previous appeal at No. 9, March Term, 1962, the broad and exclusive powers granted the commission under section 409 of the Public Utility Law, as amended, 66 PS §1179, relative to construction, alteration, relocation or abolition of highway-rail crossings and the manner and conditions in and under which said crossings shall be maintained, operated, and protected gives the commission exclusive power to authorize non-rail utility occupancy of such crossings within the area of commission jurisdiction of the project. Section 409 applies regardless of whether the highway involved is a state highway or township road. Furthermore, both The First and Second Class Township Codes, like the State Highway Law and The Administrative Code reviewed by us in No. 9, March Term, 1962, expressly recognize that in case of conflict the Public Utility Law prevails within the areas of jurisdiction granted the commission.[1]

The order of the commission is affirmed.

---

[1] First Class Townships: Act of June 24, 1931, P. L. 1206, Art. XX, §2083, as amended by the Act of May 27, 1949, P. L. 1955, §45, 53 PS §57083, and Art. XXXV, §3502, in the 1931 Act, as amended by the 1949 Act in section 64, 53 PS §58502.

Second Class Townships: Act of May 1, 1933, P. L. 103, Art. XI, §1155, as amended by the Act of July 10, 1947, P. L. 1481, §17, 53 PS §66155, and Art. XXI, §2101 in the 1933 Act, renumbered Art. XXII, §2201, and amended in section 49 of the 1947 Act, 53 PS §67201.