## May, Appellant, *v.* The County of Westmoreland.

Argued December 9, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Christ C. Walthour,* and with him *John E. Kunkle* and *John E. Kunkle, Jr.,* for appellant.—Any destruction, restriction or interruption of the necessary and common use and enjoyment of property in a lawful manner may constitute a taking for which compensation must be made to the owner of the property and need not be an actual physical taking: Sansom Street, Caplan's Appeal, 293 Pa. 483; Uhler v. Cowen, 199 Pa. 316.

*Wm. S. Rial,* and with him *H. E. Marker,* for appellee.—The mere laying out of roads cannot be said, of itself, to be a taking of the property: Harrison's Estate, 250 Pa. 129; Herman v. R. R. Co., 270 Pa. 551.

OPINION BY KELLER, J., February 28, 1930:

Exercising the authority conferred on him by section 8 of the Act of May 31, 1911, P. L. 468, (Sproul Act), the Secretary of Highways, with the approval of the Governor, apparently determined that a part or portion of State highway route No. 120, as defined and described in the Act, was dangerous or inconvenient to the traveling public in its then location, or that the expense to the Commonwealth in the construction, maintenance and repair thereof would be too great or unreasonable, and could be materially reduced or lessened by a divergence from said road or route; and thereupon, in order to correct said danger or inconvenience or lessen the cost to the Commonwealth, diverted and diverged said highway from the line or route of the same as originally prescribed, in such

manner that the new route, for a distance not appearing in this record, was located through the property of the appellant. We say "apparently," because there is nothing in the record before us definitely to establish the fact. Unless he did so the entry on the land of the appellant and the actual laying out of the new road was without any authority of law. For, while the legislature has committed to the Secretary of Highways broad powers and a wide discretion as respects the divergence of state highway routes, he must exercise both in conformity with law. The Act of 1911 permits such divergence to be made, under the conditions above recited, provided the Secretary of Highways "shall first submit a plan of the proposed change to the Governor and the same shall be approved by him." The Act does not require this plan to be recorded within the county where the divergence is made or to be filed anywhere except in the Department of Highways. Section 16 of the Act provides for the ascertainment and assessment of damages for the land so taken, if the amount of the same cannot be agreed upon; and it contemplates but one assessment under said plan. The appropriation and assessment thereunder is not to be piecemeal. Whatever the plan, as approved by the Governor and filed in the Department of Highways pursuant to section 8 as originally enacted, authorizing the divergence of state highway routes, may show as the width of the new road, is to be taken as the measure of the taking and appropriation when the land is entered on for the construction of the highway, and all damages sustained by a landowner because of such taking and appropriation, for the full width shown in the plan, are to be ascertained and assessed in one proceeding.

In addition to this power, the Act of April 6, 1921, P. L. 107 (since amended by the Act of May 16, 1929, P. L. 1770), amending section 8 of the Sproul Act, conferred additional authority on the Secretary of High-

ways, with the approval of the Governor, to establish the width and lines of any state highway, not exceeding the maximum width fixed by law for public roads, by causing a description and plan thereof to be made showing the center line of said highway and the established width thereof, to which he shall attach his acknowledgment; and thereupon such description, plan and acknowledgment shall be recorded in the office of the recorder of deeds of the proper county in a separate book kept for that purpose. This *establishment of width and lines,* is in effect, only a plotting of the highway as it may eventually be if and when opened and constructed to its full established width. It does not amount to an immediate taking and appropriation, nor warrant the assessment of damages until formal action is taken by the Secretary, with the approval of the Governor, for its widening, and the land is entered upon and occupied for that purpose. In the absence of explicit directions to the contrary the rule applicable to the "plotting" of streets and highways will govern: Phila. Parkway, 250 Pa. 257; Hermann v. North Penna. R. R., 270 Pa. 551, 553; Brower v. Phila., 142 Pa. 350; Opening of Second Ave., 7 Pa. Superior Ct. 55; Griffin v. New Castle, 88 Pa. Superior Ct. 439, 446.

The Secretary of Highways, on July 8, 1927, proceeded under this authority to establish the ultimate width and lines of the new state highway route No. 120, as diverged or diverted from the original route, and a description, plan and acknowledgment thereof, showing the center line and a width of 120 feet, located in part through appellant's lands, duly approved by the Governor, was recorded in the office of the recorder of deeds of Westmoreland County.

Appellant filed his petition in the court below for the appointment of viewers, alleging a taking and appropriation of a strip of land 120 feet wide. On motion of the county commissioners the court subsequently vacated the order and quashed the appointment

on the ground that the land actually taken was only 60 feet wide. Just how the court determined this we are unable to say. No depositions were taken and the plan approved by the Governor and filed in the Department of Highways diverging or diverting route No. 120 at this point, which governed the extent of the taking and appropriation was not offered in evidence. The letter of the Secretary of Highways, whether under seal or not, amounts to nothing. He cannot determine the extent of the Commonwealth's taking and appropriation in that way. The original plan prepared by him or his predecessor in office, pursuant to section 8 of the Act of 1911 as originally enacted, approved by the Governor and remaining on file in his department, is the *record* of the taking and appropriation, and a copy thereof certified under his hand and seal should have been placed in evidence to fix the limits of the taking and appropriation. If it shows a width of 120 feet the appointment of viewers should not have been vacated; if only 60 feet, or less than 120 feet, the action of the court was proper.

But this plan diverging the state highway is not concerned with the plotting of widths and lines to be opened in the future as permitted by the amendment of April 6, 1921, supra. It is intended to deal only with lines and widths presently to be taken and appropriated. Whatever is included in it must be considered as the measure of the present taking and appropriation, on entry by the Department for opening and construction, even though a lesser width may be actually occupied in its construction. It is equivalent to the final order confirming a report of viewers in road cases in the quarter sessions, under which damages are awarded for the full width ordered to be opened whether the road be actually occupied of that width or not. The Secretary of Highways has power, with the approval of the Governor, to change and modify the plan, before an assessment of damages or actual occu-

pation of the land affected. But, unless so changed or modified, the damages for the taking and appropriation authorized by it are assessed under it once for all, not piecemeal. If, subsequently, the Secretary of Highways, proceeding under the Act of 1921, P. L. 107, establishes a greater ultimate width for the new highway than provided for by the plan for its divergence, by recording a description, plan and acknowledgment in the recorder's office of the proper county, damages are not to be assessed thereunder unless and until there is an actual entry and occupation pursuant to a taking and appropriation by the Secretary with the approval of the Governor.

We do not think that the Act of May 14, 1925, P. L. 704, has any bearing on this controversy; notwithstanding reference is made to it by the Secretary of Highways in the description, etc., filed by him in the recorder's office of Westmoreland County, under the Act of April 6, 1921, supra, and by the appellant in his application for viewers. The Act of 1925 only applies where the Secretary of Highways deems it uneconomical to widen an existing state highway, but decides to *maintain the present highway* until such time as the amount of traffic warrants the construction of a new one. In such cases the Act authorizes the Secretary, with the approval of the Governor, to *designate the future location* of the highway at some other point and to establish the width and lines of the same. This is evident when the body of the Act is read in connection with its title and preambles, (not printed in the pamphlet laws). It has no application where the divergence has been made and the old highway no longer maintained (See Acts of May 17, 1921, P. L. 837 and May 16, 1929, P. L. 1770, as affecting Saeger v. Com., 258 Pa. 239). Where the highway is presently diverged the establishment of ultimate widths and lines is under the Act of 1921, P. L. 107, not the Act of 1925, supra.

We are of opinion that the vital evidence which should rule this case has not been presented in the record, viz., the extent of the taking and appropriation by the Commonwealth as fixed by the plan filed in the Department of Highways, when with the approval of the Governor, route No. 120 was diverted or diverged from the route originally adopted, and located through appellant's land, under authority of section 8 of the Act of 1911 before amendment; and that until that plan or a certified copy thereof is in evidence it is impossible to determine the question before us or to justify the action of the court below.

The order is reversed and the record is remitted to the court of quarter sessions with directions to reopen the proceedings and dispose of the same in accordance with the views outlined in this opinion. Notice of the hearing to be given the Attorney General.