Commonwealth, Appellant, v. Pardee Bros. et al.

354

Argued November 28, 1932. Before FRAZER, C. J., SIMPSON, SCHAFFER, MAXEY, DREW and LINN, JJ.

*John A. Moss,* Deputy Attorney General, with him *Lucien B. Carpenter,* Assistant Deputy Attorney General, and *William A. Schnader,* Attorney General, for appellant.—The secretary of highways has the power to relocate the highway with a greater width than the old highway without filing plans in the county: Erie R. R. v. Pub. Serv. Com., 77 Pa. Superior Ct. 196; May v. Westmoreland, 98 Pa. Superior Ct. 488.

The right of the secretary of highways to begin the construction of a relocated highway does not depend upon conclusion of the negotiations of the county commissioners with property owners as to damages: Fetherholf's Petition, 84 Pa. Superior Ct. 514.

The title acquired by the Commonwealth gives the right of support and does not depend upon the terms of any agreement between the county and the property owner: Penn Gas Coal Co. v. Gas Co., 131 Pa. 522; McGregor v. Gas Co., 139 Pa. 230; Scranton v. Coal Co., 256 Pa. 332; Breisch v. Coal Co., 267 Pa. 546.

*Douglass D. Storey,* with him *John H. Bigelow,* for appellees.—The secretary has no power to relocate a highway with a greater width without acknowledging and recording the plans: May v. Westmoreland, 98 Pa. Superior Ct. 488; Appointment of Viewers, 103 Pa. Superior Ct. 212; Penn Builders v. Blair Co., 302 Pa. 300.

The secretary has no right to begin the construction of a highway until after the county commissioners have endeavored to agree with the owner: Fetherholf's Petition, 84 Pa. Superior Ct. 514.

The title of the Commonwealth depends on the terms of the agreement with the property owner: McGregor v. Gas Co., 139 Pa. 230; Wilson v. Scranton, 141 Pa. 621; Phila. Felt Co.'s App., 293 Pa. 551.

*R. Lawrence Coughlin,* Solicitor, for Luzerne Co., appellee.

OPINION BY MR. JUSTICE DREW, January 3, 1933:

This bill in equity was filed by the Commonwealth to restrain Pardee Brothers & Company, Inc., one of the defendants, from mining coal under a portion of State Highway No. 185 in such manner as to cause subsidence of the highway by depriving it of vertical and lateral support. A preliminary injunction was granted, and under Equity Rule 48 said defendant and Fidelity-Philadelphia Trust Company, Trustee, also a defendant, filed preliminary objections to the bill. These were sustained, with leave to the Commonwealth to amend, and an amended bill was filed, but the court considered it insufficient to meet the objections, and on defendants' motion entered a final decree dissolving the injunction and dismissing the bill. The Commonwealth then took this appeal.

The amended bill avers that the Commonwealth, acting through the department of highways, in accordance with plans approved by the governor and filed in the department of highways August 4, 1930, relocated a section of State Highway No. 185, in Luzerne County; that by the filing of these plans and relocation the Commonwealth condemned a piece of land 80 feet wide, extending from the intersection of the highway and the Carbon-Luzerne county line northwardly to the City of Hazleton; that it has, at great expense, paved with

cement the highway as relocated; that before the construction of the relocated highway was undertaken the secretary of highways gave written notice of the contemplated changes to the county commissioners of Luzerne County; that the Pardee company is the lessee of certain anthracite coal veins under and adjacent to the relocated highway, and has notified the Commonwealth that it intends to mine these veins in such a way as to deprive the highway of vertical and lateral support; that the removal of this support will cause the highway to subside, shift, and be broken, and will create a menace to the safety of the traveling public and result in great damage to the Commonwealth; that the Fidelity-Philadelphia Trust Company, Trustee, is the owner of the legal title to the land, and that the County of Luzerne (also a defendant) is a party in interest.

In their preliminary objections defendants charged that the bill is insufficient to establish the Commonwealth's right to an injunction, (1) in that it fails to aver that the secretary of highways acknowledged the plans for the relocation and recorded them in the office of the recorder of deeds of Luzerne County; (2) in that it fails to aver that the commissioners of Luzerne County entered into an agreement with the lessee or the owners of the lands affected as to damages, or that such agreement could not be made, before the secretary of highways undertook the construction of the relocated highway; and (3) in that it fails to disclose the nature, quality, and extent of the estate acquired by the Commonwealth in the lands referred to in the bill. In our review of the action of the court below on these preliminary objections, the only question for our consideration is the legal sufficiency of the bill. See Midland Boro. v. Steubenville Traction Co., 300 Pa. 134, 138.

In support of their contention that it was necessary to record the plans in Luzerne County, defendants rely upon section 8 of the Act of May 31, 1911, P. L. 468 (the Sproul Act), as amended by the Act of May 16, 1929,

P. L. 1770. The first paragraph of that section expressly provides that the secretary of highways may divert the course or direction of any part of a state highway, provided he first submits a plan of the proposed change to the governor and procures his approval thereof. The act does not require the plan to be recorded in the county or to be filed anywhere except in the department of highways: May v. Westmoreland Co., 98 Pa. Superior Ct. 488. This proposition is not seriously controverted by defendants, but they contend that since the relocated portion of the highway appears by the bill to be wider than the superseded portion, there was an "establishment of width and lines" which under the second paragraph of the section was required to be recorded in Luzerne County. This is clearly a mistake. The divergence shown in the bill is merely a change in the direction or course of the highway and is governed by the first paragraph of the section alone. Whether the new portion of the highway is wider or narrower than the old part, or of the same width, can make no difference; it still remains a divergence. There is nothing in the first paragraph of the section which requires a divergence to be of the same width as the old road. The relocation shown in the bill is in no sense an "establishment of width and lines" within the meaning of the second paragraph, even though the new portion of the highway is wider than the old. It is not a mere plotting of a contemplated future taking, as "establishment of width and lines" was defined in May v. Westmoreland Co., supra, or a present widening of an existing highway without deflection, which was said to be an "establishment of width and lines" in Matter of Appointment of Viewers, 103 Pa. Superior Ct. 212. In Penn Builders, Inc., v. Blair Co., 302 Pa. 300, the recording of a plan in the county was ordered not because the divergence there involved was an "establishment of width and lines" but simply because it was necessary to supersede a plan already on record in the county. Since in the present case there

was no establishment of width and lines within the meaning of the second paragraph, acknowledgment and recording in Luzerne County were not required, and it was therefore unnecessary to aver that such had been done.

Was it necessary for the Commonwealth to aver that an opportunity was given for the negotiation of agreements between the county commissioners and the abutting landowners as to damages before the construction of the highway was undertaken? Section 16 of the Sproul Act, supra, as amended by the Act of May 4, 1927, P. L. 692, provides as follows:

"Before the Secretary of Highways shall undertake the construction, reconstruction, or improvement of any State highway,......wherein a change of width or of existing lines and location is necessary, and damage is likely to result to abutting property, he shall notify the county commissioners of the proper county in writing of the contemplated change in such existing width, lines, and location, whereupon the county commissioners, when possible, shall enter into an agreement with the owner or owners of said property as to amount of damage to be paid to the said owner or owners, which damage, if agreed upon, shall be paid by the county; or in case an agreement satisfactory to the county commissioners and said owner or owners cannot be made, the Secretary of Highways may proceed with the work....., and the owner or owners of said property damaged thereby may present their petition to the court of quarter sessions for the appointment of viewers to ascertain and assess such damages. ......"

It must be conceded that the section contemplates that the secretary of highways shall proceed only in case an agreement as to damages has been made or in case an agreement satisfactory to the county commissioners and the owner or owners cannot be made. But the real question is, does a failure of the secretary to comply with this provision make void the whole proceeding and, in the instant case, make it possible to destroy a state high-

way and thus cause great loss and inconvenience to the public? We cannot bring ourselves to this conclusion. The legislature could never have intended that such drastic consequences should follow the failure of the secretary of highways to comply with this merely ministerial, though mandatory, provision. Any other construction would savor of unreasonable strictness and would visit upon the taxpayers and the traveling public consequences wholly out of proportion to any possible damage that might be sustained by the county or the landowner as the result of the failure of the secretary to do his duty. Similar reasoning was followed by the Supreme Court of Vermont in Kidder v. Jennison, 21 Vt. 108. There the statute provided that town selectmen in laying out highways should fix a time, not to be less than six months in the case of enclosed or improved lands, within which the owners of the lands taken should remove their buildings and other property, and that the selectmen might take possession at any time after the expiration of the period so fixed. The court, speaking through the eminent Judge REDFIELD, held that a failure of the selectmen to comply with this provision before taking possession did not invalidate the establishment of the highway. This case was followed in Robinson v. Winch, 66 Vt. 110. In the instant case, so far as compensation is concerned, the owner is deprived of no right, because, as we have seen, the act provides that he may "present [his] petition to the court of quarter sessions for the appointment of viewers to ascertain and assess such damages," which shall be paid by the county. It is evident, therefore, that the bill should not have been dismissed for failure to aver compliance with the provision in question.

Finally, does the bill sufficiently disclose the nature, quality, and extent of the estate acquired by the Commonwealth in the lands referred to therein? The Commonwealth seeks relief only against the lessee of the coal, and the sole question in this phase of the case is whether the bill sufficiently alleges the acquisition by the Com-

monwealth of a right to vertical and lateral support as against such lessee.

The amended bill avers that the Commonwealth, acting through the department of highways, in accordance with plans approved by the governor and filed in the department of highways, relocated a section of State Highway No. 185 in Luzerne County, and by the filing thereof condemned, under its power of eminent domain, a piece of land 80 feet wide for highway purposes, together with the necessary vertical and lateral support for the surface of the proposed highway. This was a sufficient averment of the nature, quality, and extent of the estate acquired by the Commonwealth. The case of Penn Gas Coal Co. v. Versailles Fuel Gas Co., 131 Pa. 522, is decisive of the question. In that case it was held that an entry upon the surface under the power of eminent domain was a condemnation of a right to surface support as against the underlying owner, even though the surface owner had released to the underlying owner his right to surface support. We there said: "If the sale of the coal be made in the usual manner, the purchaser takes it subject to the burden of surface support, and cannot remove it without leaving a sufficient quantity to support the surface...... An entry in that case upon the surface has the same effect as though made before the sale of the coal, and the right to surface support residing in the owner of the surface passes to the corporation when it appropriates the surface. If, in addition to severing the coal from the surface by a sale, the owner releases his vendee and the underlying estate from the obligation of surface support, the release is binding upon him and those taking title from him, but it cannot bind the state, or its grantee, entering by virtue of the title paramount residing in the sovereign. ...... An entry by the state upon the surface is an entry upon the subjacent strata so far as they are necessary to support the surface for the purposes of the......structure to be built thereon." See also McGregor v. Equitable Gas

Co., 139 Pa. 230; Breisch v. Locust Mountain Coal Co., 267 Pa. 546. In the light of the foregoing, it is apparent that the averment of a condemnation by the Commonwealth for highway purposes is a sufficient allegation of the acquisition of a right to surface support.

The decree of the court below is reversed, the bill of complaint and the preliminary injunction thereon are reinstated, and the cause is remanded for further proceedings, the costs of this appeal to be paid by appellees.