## Eshleman *v.* Commonwealth, Appellant.

Argued November 30, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*George W. Keitel,* Assistant Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, and *James N. Lightner,* for appellant.

*Charles W. Eaby,* for appellee.

OPINION BY MR. JUSTICE DREW, January 18, 1937:

This is an appeal by the Commonwealth of Pennsylvania from a judgment entered against it by the Court of Common Pleas of Lancaster County at the suit of S. Kendrick Eshleman, appellee, for land damages resulting from the construction by the Department of Highways of additional shoulders on Route 215, immediately to the south of the appellee's premises.

In 1792, the Legislature directed the establishment of a fifty-foot right-of-way for a turnpike from Philadelphia to Lancaster (Act of April 9, 1792, Volume XIV, Statutes at Large, 1791-1793, p. 279). This roadway, before appellee's property, was afterwards taken over as a state highway under section 6 of the Act of May 31, 1911, P. L. 468 (the Sproul Act), and designated as Route 215, Lancaster County.

The Secretary of Highways, with the approval of the Governor, under section 8 of the Act of 1911, supra, as amended, prepared and filed, on July 17, 1929, a plan setting forth the width of this highway. It further specified the northern and southern boundary lines in front of appellee's premises. The width thus established on the northerly side of the center line was twenty-five feet, and as agreed in the stipulation of facts, "the northern boundary line in front of plaintiff's property was not changed from the line as previously established."

Work was begun pursuant to this plan on August 22, 1929, and the existing macadam surface replaced by a concrete highway twenty feet wide, with shoulders

seven and one-half feet wide. On October 24, 1933, a second plan was prepared, approved and filed in accordance with law, but since no change was made in the right-of-way line adjacent to appellee's property as shown by the Plan of 1929, and the construction performed was on the opposite (southerly) side of the highway, it is not material in the present case.

Similarly, a plan prepared, approved and filed on November 21, 1934, in accordance with the law, made no change in the right-of-way line adjacent to the appellee's land as shown by the Plan of 1929. This plan is referred to below as the Plan of 1935.

On March 27, 1935, construction of an additional ten-foot concrete lane, with seven and one-half foot shoulders on each side of the concrete pavement was commenced. It was completed on July 26, 1935. All of the construction on the northern side of the highway was confined within the right-of-way line shown by the 1929 plan. A small strip, three feet in width and 100 feet in length in front of appellee's property, which had not theretofore at any time actually been occupied for highway purposes, was taken. Upon his petition complaining of this occupancy, viewers were appointed. They awarded him $350. The Commonwealth of Pennsylvania appealed to the Court of Common Pleas where an issue was framed, and the case submitted upon an agreed statement of facts and certified copies of the relevant portions of the 1929 and 1935 plans. Judgment was entered for appellee and against the Commonwealth for $350. This amount is not in controversy, counsel having agreed to it as a fair valuation of the damages sustained in the event the Commonwealth should be held liable.

The decision of the court below was based upon the ground that the Plan of 1929 involved merely the "establishment of width and lines" under the Act of April 6, 1921, P. L. 107, and that there was no taking until 1935, when the Commonwealth was liable for any dam-

ages resulting, under the Act of January 2, 1934, P. L. 209. This act was itself an amendment of section 16 of the Act of 1911, supra, and substituted the Commonwealth in place of the County as the party responsible for damages to abutting property owners where the county commissioners had not consented and agreed to the changes in width, lines, and location contemplated by the proposed construction. It is admitted the county commissioners had not consented and agreed to the changes made by the 1929 plan.

It nowhere appears in the stipulated facts that the fifty-foot right-of-way directed to be established by the Act of 1792 was identical with the fifty-foot right-of-way established in the Plan of 1929. For the purposes of this appeal, therefore, we cannot consider that act as having any effect upon the questions here in issue.

The problem before us is solely one of the effect of the Plan of 1929. If that plan were merely a plotting of a contemplated future taking (*May v. Westmoreland County*, 98 Pa. Superior Ct. 488) or a present paper widening of an existing highway without divergence (*Matter of Appointment of Viewers*, 103 Pa. Superior Ct. 212) there would be no doubt that the taking thereunder would have occurred in 1935, when construction was begun (see *Philadelphia Parkway Opening*, 295 Pa. 538; *Penn Builders, Inc. v. Blair County*, 302 Pa. 300), and that liability would, as the court below held, be imposed upon the Commonwealth under the Act of 1934.

Such, however, is not the case here. The Plan of 1929 was plainly neither a plotting of a future taking or a paper widening without divergence. It showed an actual divergence of the center line of the new construction from the center line of the existing roadbed, which line was shifted to the south—in some places as much as five feet. The mere fact that the new part of the highway was a widening does not prevent the deflection in the center line from being a divergence within the meaning of the Act of 1911, supra, section 8,

as amended.: *Commonwealth v. Pardee Bros.,* 310 Pa. 353. Hence, if there were no taking prior to 1929, as we must assume because of the state of the record, there certainly was a taking then. As was said in *May v. Westmoreland County,* supra, at page 490, "Whatever the plan . . . authorizing the divergence of state highway routes, may show as the width of the new road, is to be taken as the measure of the taking and appropriation when the land is entered on for the construction of the highway, and all damages sustained by a landowner because of such taking and appropriation, for the full width shown in the plan, are to be ascertained and assessed in one proceeding." It follows the damages claimed and allowed by the court below were incident to the taking in 1929, and if, at that time, there was any damage legally assessable, the County and not the Commonwealth was liable. For this reason, there can be no recovery here. The judgment must be reversed.

Judgment reversed.