Northern Pipe Line Company Case.

Submitted May 4, 1938.

Before KEL-LER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and RHODES, JJ.

*Geo. F. Whitmer* and *Breene & Jobson,* for appellant.

*Lloyd F. Weaver* and *A. A. Geary,* County Solicitor, for appellee.

OPINION BY KELLER, P. J., September 28, 1938:

State Highway Route No. 68—also known as Legislative Route No. 380—passes through Farmington Township, Clarion County. Until 1931 that portion of the road lying between stations 97 + 18 and 330 + 75, a distance of 23,975 feet or over 4½ miles, had not been improved and was only an earth road. The Secretary of Highways, acting for the Department of Highways, decided to improve this part of the road and with that end in view divided it into two sections: (1) From station 97 + 18 to station 188 + 03, a distance of 9,085 feet, or 1.72 miles; (2) from station 188 + 03 to station 330 + 75, a distance of 14,890 feet, or 2.82 miles.

In this case we are concerned only with the first section, although, it may be added, a relocation of the road in the second section for almost its entire length was also made.

Considering, then, section 1, the Department's engineers found that by relocating the highway south of the old road for a distance of about 7,500 feet, three grade crossings of the Baltimore & Ohio Railroad could be avoided, one at station 120, one at station 161 and one at station 177, and that the increased expense of construction would be only $2,000, of which the railroad was willing to pay $1,000, if the crossing at station 177 was abolished. To obtain a better grade for this improvement the highway was also relocated north of the old road for about 1,500 feet.

Accordingly on March 7, 1931 a plan so relocating the state highway was prepared by the Division Engi-

neer and its approval recommended to the Secretary of Highways, and on March 25, 1931, the plan was approved by the Chief Engineer, the Secretary of Highways and the Governor. This was done pursuant to section 8 of the Act of May 31, 1911, P. L. 468, and on approval by the Governor the road as relocated became the route of the state highway in place of the old road, and the plan so approved became the record of the appropriation of the land taken for the new or relocated highway, to be paid for by the agency of Government legally responsible therefor when actual entry was made on the land: *May v. County of Westmoreland,* 98 Pa. Superior Ct. 488; In the *Matter of Appointment of Viewers,* 103 Pa. Superior Ct. 212, 158 A. 296; *Urbanskis' Petition,* 128 Pa. Superior Ct. 293, 296, 194 A. 210; *Penn Builders v. Blair County,* 302 Pa. 300, 153 A. 433; *Eshleman v. Commonwealth,* 325 Pa. 521, 524, 525, 189 A. 340.

Following this, work on the relocated highway began on May 4, 1931 and was completed on August 11, 1931.

In laying out the relocated highway certain land of Northern Pipe Line Company was taken and appropriated, and its pipe line, located on its right of way over other lands so taken and appropriated, had to be lowered, causing it additional expense.

After the relocation had been decided on and approved but before the work on the ground was begun, the Secretary of Highways filed a petition with the Public Service Commission, under section 12 of Article V of the Public Service Company Law of July 26, 1913, P. L. 1374, praying for the abolition of the grade crossing at station 177 of the old road, and for the allocation of the cost of construction of a marginal road incident to the closing of the crossing, having reference thereby to the $1,000 which the railroad company had agreed to pay on the abolition of said crossing. A hear-

ing was had on April 22, 1931, when the plan of the relocated highway, approved as above, was presented, which showed that the new highway had rendered the grade crossing at station 177 unnecessary, and the agreement with the railroad company was referred to and acknowledged by both parties. At this hearing the examiner for the Commission interrogated the Assistant Engineer representing the Department of Highways, as follows: "Will it be necessary for the Public Service Commission to condemn any private property in connection with this relocation and in order to complete it?" To which the representative of the Department replied: "It will not. The highway is being relocated under and by authority of the Highway Act of May 31, 1911."

On October 5, 1931 the Public Service Commission entered its order approving the abolition of the grade crossing at station 177 and directing the payment of $1,000 by the Baltimore & Ohio Railroad Company to the Department of Highways, to apply on the cost of materials furnished and work done by the Department of Highways; but ordering the continuance of the existing grade crossings at stations 120 and 161 to accommodate local traffic. It will be noted that this order was entered nearly two months after the actual relocation of the state highway had been completed.

On August 1, 1932 Northern Pipe Line Company filed its petition in the court below asking for the appointment of viewers to assess the damages caused by the taking and appropriation of certain of its land in Farmington Township and by the injury to its right of way and the necessary lowering of its pipe lines due to the taking and appropriation of other lands, in the relocation of said highway. Viewers were appointed who, on December 5, 1932, after full hearing, filed their report awarding damages to the petitioner. To this the County on December 19, 1932 filed the fol-

lowing exception: "The appointment of viewers and assessment of damages is based entirely on statutes. The law makes no provision for the appointment of viewers to assess damages, where said damages were caused by the abolition of a grade crossing; therefore the said viewers were appointed without authority of law and they had no legal right to assess damages. County courts have no jurisdiction in such cases." Certain delays occurred in the disposition of the exceptions for which the present court below was not responsible, but on September 20, 1937 the exception of the County of Clarion was sustained, confirmation of the report of viewers was refused and stricken off, and the report was quashed. Northern Pipe Line Company appealed. The order will be reversed.

Under the law in force at the time of the taking and appropriation [1] of appellant's land, the County of Clarion was responsible for the payment of damages caused by the taking and appropriation of land in the relocation of a state highway under section 8 of the Act of May 31, 1911, P. L. 468, and its amendments. Appellant's land was actually taken in the relocation of the highway. *State Highway Route 72,* 71 Pa. Superior Ct. 85, affirmed, 265 Pa. 369, 108 A. 820. The amount of the award is not in question in this proceeding. The exception filed by the county went to the jurisdiction of the court of quarter sessions to appoint viewers and of the viewers to make any award.

The exceptant and the learned court below have misunderstood and misapplied the statutes involved.

------

[1] See the very full and complete resume of the acts of assembly relating to the agency of Government responsible for the payment of damages sustained by the taking and appropriation of lands in the relocation of state highways, under section 8 of the Act of May 31, 1911, P. L. 468, and its amendments, contained in Mr. Justice STERN's opinion in *Heil v. County of Allegheny,* 330 Pa. 449, 199 A. 341.

While the Public Service Commission by section 12 of Article V of the Public Service Company Law, supra, was given exclusive power and authority to order existing grade crossings to be relocated, altered or abolished and to ascertain and determine the damages which owners of adjacent property taken, injured or destroyed might sustain thereby, the Secretary of Highways, with the approval of the Governor, is expressly authorized by section 8 of the Act of May 31, 1911, supra, to relocate state highways when any part or portion of them is dangerous or inconvenient to the traveling public. These powers are not conflicting nor incompatible. The relocation of the state highway would not amount to the abolition of the grade crossing. It would simply tend to divert general traffic away from it. No governmental agency but the Public Service Commission—now the Public Utility Commission—can order a grade crossing to be *abolished,* but the diversion of traffic by the relocation of the state highway may render unnecessary the grade crossing on the old road—no longer a state highway after the relocation—and so call for its abolition by the Commission, as was done with the grade crossing at station 177; or it may, by reason of the decreased general traffic on the old road caused by the relocation of the state highway, render the grade crossings so lacking in danger that they may be left open for local traffic, as was done with the grade crossings at stations 120 and 161. The Secretary of Highways cannot use the proceedings available for the abolition of a grade crossing to relocate and build a state highway and fasten the cost of construction on those responsible for the crossing; *Erie R. R. Co. v. P. S. C.,* 77 Pa. Superior Ct. 196. That case was the converse of this one. The State Highway Department there attempted to do what the appellee and the court below assert should have been done in this case, and we held that if the improve-

ment really amounted to a relocation and rebuilding of a state highway 'its cost could not be saddled on the railroad company or the interested municipalities. In the present case the Department of Highways conformed to the spirit of the Erie Railroad case. It was about to improve this section of state highway and in order to remove the travel from the grade crossings on the old highway it relocated the highway under the powers given it by the Act of May 31, 1911. It did not apply to the Public Service Commission for authority to relocate the highway. It did not have to. As was well said by Judge HEAD in *Erie Railroad Co. v. P. S. C.*, supra, p. 206: "If the highway department wisely chose to relocate a portion of the legislative route so as to secure a better road bed, 'to remove the travel from grade crossings, or the highway from the crossings,'—as the department engineer expressed it—the power to carry out such plan was complete without either aid or interference from the Public Service Commission." The adoption of the plan and its approval by the Governor constituted a relocation of the highway and was an appropriation of the land needed for the new location, to become effective when entry was made. The Department needed no permission from the Public Service Commission to do this and obtained none. The relocated highway was opened and completed before the Public Service Commission entered its order abolishing the crossing at station 177. The crossings at stations 120 and 161 are not affected by the relocation except in so far as through traffic is diverted to the relocated highway. The application to the Public Service Commission was for an order abolishing a grade crossing which was rendered unnecessary by the relocated state highway and the Department of Highways' engineer specifically stated that the new or relocated road had not been opened under the proceedings to abolish the grade crossing but under the power

given by the State Highway Act of May 31, 1911 and hence that the Commission would not be called on to ascertain and determine the damages to landowners whose property had, been taken or destroyed by the relocated highway.

It follows that the damages to such landowners for land taken and appropriated in the relocation of this highway were to be ascertained and determined under the law then in force for the ascertainment and determination of damages for land taken under Section 8 of the Act of May 31, 1911, and its amendments, to wit, by a jury of view to be appointed by the court of quarter sessions, as was done in this case.

The order is reversed, exceptions dismissed and report confirmed.

Judge PARKER took no part in the consideration or decision of this case.