Angle *v.* Commonwealth, Appellant.

Argued May 25, 1959.   Before Jones, C. J., Bell, Musmanno, Jones, Cohen and Bok, JJ.

*Marshall J. Seidman,* Deputy Attorney General, with him *Frank E. Roda, Michael Deckman, Jacob J. Kilimnik,* Assistant Attorneys General, *Michael J. Stack, Jr.,* Deputy Attorney General, *John R. Rezzolla, Jr.,* Chief Counsel, Department of Highways, and *Anne X. Alpern,* Attorney General, for appellant.

*J. Glenn Benedict,* for appellees.

Opinion by Mr. Justice Musmanno, June 30, 1959:

The question in this case may be stated quite simply: May the Commonwealth, under the power of eminent domain, take property without timely and adequate notice to the property-owner involved?

516

On May 11, 1878, the Court of Quarter Sessions of Franklin County, after appropriate preliminary proceedings before a duly appointed Board of Viewers, opened through Quincy Township of that county a public road 30 feet wide.

On August 20, 1924, the Governor of the Commonwealth approved plans for the reconstruction and improvement of this road. The plans which were filed in the office of the Secretary of Highways showed that the Department intended to build within the 30-foot strip a cement pavement 16 feet wide with 5-foot berms or shoulders on either side, thus making the overall width of the travelled portion of the highway 26 feet. However, parallel to the outer margins of the 30-foot strip, there appeared on the plans some pencilled lines which suggested that at a future time the Commonwealth might desire to widen the road to 50 feet. The space between the pencilled projections carried the words: "Ultimate Right of Way."

Nothing was done regarding this envisioned 50-foot Ultimate Right of Way at the time. In fact, when the Highway Department proceeded to construct the road in accordance with the 1924 plans, construction was limited to a 26-foot road within the 30-foot strip limitations.[1] So far as the record shows, there was no notice to anyone in the field that there was ever any intention on the part of the Commonwealth to extend its dominion beyond the 30-foot margins.

Thirty-two years after the ideation of the 1924 tentative plan for a 50-foot road, the Commonwealth decided to put the idea into operation. It now filed in the office of the Secretary of Highways, on January 31, 1956, a Governor-approved plan which specified that the road, technically called Legislative Highway Route,

---

[1] Report of Viewers, Findings, V, 9.

Application 585-3, was to be widened to 50 feet. The pencilled lines which in the 1924 plan were called Ultimate Right of Way now became Required Right of Way. Widened to 50 feet, the road would encroach upon the lands of the plaintiffs in this case, Lloyd R. Angle and his wife, Mary H. Angle, who own a 115-acre farm in Quincy Township.

On April 25, 1958, the plaintiff Angles filed in the Court of Quarter Sessions of Franklin County a petition for the appointment of Viewers to determine the damages suffered by them because of the condemnation of January 31, 1956. The petition averred that the proposed building of the 50-foot highway decreased the value of the plaintiffs' property in that it destroyed a cistern, shade trees, shrubbery, fences, an approach to the barn, and in other ways "damaged, depreciated and destroyed the petitioners' property and materially depreciated the value" of their farm.

At the hearing held by the board of viewers appointed by the court, the Commonwealth opposed the claim for damages of the Angles. Specifically, the Commonwealth contended that since the road improvements were all to take place[2] within the 50-foot Ultimate Right of Way established in 1924 and since the 1924 owners of the Angle farm had not petitioned for damages within 6 years following the filing of the plans in 1924, the present owners were, because of the statute of limitations, out of court.

. The board of viewers rejected this contention and held that the so-called Ultimate-Right-of-Way designation on the 1924 plan did not amount to a condemnation of property and that the owners of the Angle farm were not bound by the reference to the possible future expansion since they received no notice of it, nor was

---

[2] (With some slight exceptions not material in this decision.)

a copy of the plan filed in the office of the register and recorder of Franklin County. The board awarded damages to the plaintiffs, Lloyd and Mary Angle, in the amount of $7,000. The Commonwealth filed exceptions[3] to the viewers' Report, and the matter was heard before the court of quarter sessions which dismissed the exceptions. The Commonwealth appealed.

The order of the lower court must be affirmed. Nothing can be more fundamental in representative government than that no one may be deprived of life, liberty, or property without due process of law. And the most rudimentary requirement of due process in eminent domain proceedings is that the landowner shall know that his land is being taken or is about to be taken. Justice PITNEY superbly declared in *Ochoa v. Hernandez y Morales*, 230 U. S. 139, 161, that: "The principle, known to the common law before Magna Charta, was embodied in that charter (Coke, 2 Inst. 45, 50) and has been recognized since the Revolution as among the safest foundations of our institutions. Whatever else may be uncertain about the definition of the term 'due process of law' all authorities agree that it inhibits the taking of one man's property and giving it to another, contrary to settled usages and modes of procedure, and *without notice* or an opportunity for a hearing."

When the Department of Highways filed its plans in the office of the Secretary of the Commonwealth in 1924, it made no effort to advise the owners of the Angle farm, directly or indirectly, that some day it would cut a swath 50 feet wide through the farm. The construction work, as we have already seen, was limited

---

[3] (The plaintiffs appealed to the court of common pleas for a jury trial, alleging inadequacy of damages, which matter is still pending.)

to the 16-foot cement pavement and the 10 feet of berm. Thus, anyone looking on the work as it progressed, would have no reason to assume that the Commonwealth ever intended to go beyond the 30-foot borders established in 1878. None of the cost of the 1924 construction was borne by Franklin County so that the local authorities had no fiscal or other knowledge of the contents of the plans filed in Harrisburg.

Thus, so far as avenues of information in Franklin County were concerned, the public road in Quincy Township had only a 30-foot right of way as established in 1878, and would continue to remain of that width unless, of course, the Commonwealth by appropriate legal proceedings, with proper notice to all parties involved, would determine otherwise. It cannot be doubted that if property owners, assuming that they got to know about the 1924 plans in Harrisburg, had sought to collect damages on the basis of a 50-foot road, they would have been refused damages on the basis that there had been no taking and that, therefore, damages could not accrue until there occurred a definitive condemnation.

The Commonwealth maintains that when the 1924 plans were filed in Harrisburg, this fact alone constituted automatic notice to landowners in Franklin County that from that moment, Legislative Highway Route, Application 585-3, was a 50-foot highway. Such a position is illusory. It is said that the Roman emperor Caligula, seeking reasons to inflict cruel punishment on the people through ostensibly legal means, would post his edicts on the pillars and walls of Rome so high that they could not be read. Then, when these edicts were unknowingly violated, he justified the resulting punishments on the basis that the people should know what had been publicly displayed.

Harrisburg is not so large as ancient Rome, nor is it in the same population class as today's New York, London, or Paris. Nonetheless it is a city of sizeable proportions and contains many government buildings which have miles of corridors, and countless acres of filing cabinets. To expect farmers from faraway Franklin County, coal operators from the anthracite fields of Lackawanna County and grape-growers from distant Erie County to travel to Harrisburg from time to time to search through the labyrinth of offices and files for plans which could possibly affect their property rights is no more reasonable than what Caligula did 2000 years ago.

Commonwealth counsel assert in their brief that: "The Department of Highways had no duty to record the 1924 plan in the Recorder's Office in Franklin County, and that filing the same in the Office of the Secretary of Highways in Harrisburg was all the notice required to make the same an effective condemnation plan."

But the 1924 plan did not specify a 50-foot road; it very particularly spoke of a 26-foot road within a 30-foot right of way. The 50-foot reference was designated only by pencilled lines and a varied wording of ultimate and future right of way. There was no indication, either by word or symbol, that the Commonwealth intended to condemn a 50-foot belt of land. The grave and portentuous act of steam-shoveling away part of a citizen's earth and converting it into public property should be evidenced by something more informative and lasting than pencilled scrawlings on a paper which is committed to an entirely different project.

Although, of course, it is not maintained that the Department of Highways purposely wished to deceive anyone, it still must be said that the manner in which the 50-foot right of way was simply hinted at in the

1924 plan (followed by concealment of this hint from the property owners directly involved) suggests a covert and surreptitious method of doing business which has no place in a government dedicated to open planning openly arrived at. For the Commonwealth to acquire, free of charge, a large portion of some one else's property by means of the device here described is something which the court below would not permit and which this Court equally will not countenance.

The Commonwealth argues that the 1924 plan must be interpreted in the light of the Act of April 6, 1921, P. L. 107, but it does not explain whether its supposed authority is derived from that provision of the law which was originally enacted in 1911, or as it was amended in 1921. Under the original legislation of 1911 (Act of May 31, 1911, P. L. 468, 36 Purdon, Sec. 61), the Highway Commissioner was authorized, when a State highway offered danger or inconvenience to the traveling public, to divert the course of the highway in order to correct the danger or inconvenience, by submitting a plan of the proposed change to the Governor. Nothing was said as to whether this plan was to be filed, and, if so, where, once it was approved by the Governor. To bury a plan in a drawer somewhere in Harrisburg or to throw it on to an obscure shelf to gather dust, and then hold that, as of that date, the statute of limitations will begin to run against the involved—but unnotified and unadvised—property owner, constitutes about as flagrant a violation of constitutional property rights as can be projected in fact or in imagination.

The lower court, commenting on the unamended Section 8 of the Act of 1911, said: "If the statute is intended to authorize the filing of such an approved plan and taking of real estate of an owner with no more notice to the owner personally or by posting upon his

grounds than is envisaged by this statute, it is our view that the statute, regardless of its long presence upon the statute books, is unconstitutional as a deprivation of property without due process of law violative of the Pennsylvania Constitution, Article I, Section 9, to say nothing of the 14th amendment to the Federal Constitution."

In the state of the law as above analyzed, the lower court would undoubtedly be right. Article I, Sec. 10, of the Pennsylvania Constitution specifically states that private property shall not be taken or applied to public use, "without authority of law and without just compensation being first made and secured." Article I, Sec. 9 declares that no person may be deprived "of his life, liberty or property unless by the judgment of his peers or the law of the land."

The law of the land certainly envisages notice to all persons whose possessions are placed in jeopardy whether by private invasion or by governmental intervention. Notice in the law is the weather warning before the storm, it is the bell buoy announcing the perilous rocks and reefs in the channel, it is the fire alarm before the conflagration reaches catastrophe. Without notice to all parties concerned, a lawsuit is a meaningless aggregation of papers. Without adequate notice to a losing party in a lawsuit, the winner has achieved an empty victory. Without notice to a landowner that the Commonwealth intends to take his property, the Commonwealth acquires no higher rating than that of an individual trespasser who transgresses on land which does not belong to him.

Section 100 of the Restatement, Conflict of Laws, declares: "A state cannot exercise through its courts, judicial jurisdiction over a thing, although it is within the territory of the state, unless a method of notification is employed which is reasonably calculated to give

knowledge of the attempted exercise of jurisdiction and an opportunity to be heard to persons whose interests in the thing are affected thereby."

Applying this language to the facts in the case at hand, it can hardly be said with any assurance of convincing anybody that the mere filing of a plan in a multiple-officed departmental building in Harrisburg is "reasonably calculated to give knowledge . . . to persons whose interests in the thing are affected thereby."

However, there is no need to pass upon any possible unconstitutionality of Section 8 of the Act of 1911, as discussed by the court below, because that section was amended by the Act of 1921 to provide: "Whenever the State Highway Commissioner shall establish the width and lines of any such State Highway, he shall cause a description and plan thereof to be made, showing the center line of said highway and the established width thereof, and shall attach thereto his acknowledgment. Thereupon such description, plan, and acknowledgment shall be recorded in the office of the recorder of deeds of the proper county, in a separate book kept for such purpose, which shall be furnished to the recorder of deeds by the county commissioners at the expense of the county."

If the Department intended, by the filing in Harrisburg of the plans of 1924, to condemn land to accommodate a 50-foot highway, it was required by the amendment just quoted to file the plan and description in Franklin County. This it failed to do and it offers no explanation for the failure. On the contrary, it would appear, from the Commonwealth's brief, that the Department felt it could ignore this statutory provision.

But this provision is by no means one lightly to be regarded when one considers the following paragraph in the amended Section 8: "No owner or occupier of

lands, buildings, or improvements shall erect any building or make any improvements within the limits of any State Highway the width and lines of which have been established and recorded as provided in this section, and, if any such erection or improvement shall be made, no allowance shall be had therefor by the assessment of damages."

If the filing in Harrisburg (and not elsewhere) of the 1924 plans would constitute notice to the owners of the Angle farm, under the provisions of the statutory amendment cited, it would mean, according to the reasoning of the Commonwealth, that the present owners of the Angle farm would not be entitled to compensation for improvements made on the farm within the 50-foot width of the proposed highway after 1924 and before 1956. The injustice of such a proposition is so evident that it is unnecessary to discuss it.

The court below was justified, on the facts and the documentation in the case, in dismissing the exceptions filed by the Commonwealth to the viewers' report, and the order of the court entered January 3, 1959, is therefore, affirmed.

Mr. Justice McBRIDE took no part in the consideration or decision of this case.