Strong Appeal.

52

Argued November 18, 1959.  Before JONES, C. J., BELL, MUSMANNO, JONES and BOK, JJ.

*Gerald K. Gibson,* with him *Edward J. Harkins,* for appellants.

*Frank E. Roda,* Assistant Attorney General, with him *Michael R. Deckman,* Assistant Attorney General, *David E. Abrahamsen,* Deputy Attorney General, and *Anne X. Alpern,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE BOK, June 3, 1960:

Appellants filed a petition in the Court of Quarter Sessions of Cambria County on June 1, 1955, for a Board of View. This was granted. The Commonwealth then filed its petition for a rule to show cause why the appellants' petition should not be dismissed. After answer, hearing, and argument, the rule of the latter petition was made absolute and this appeal was taken.

The petition for a Board of View was filed as a result of the paving and widening of a part of State Highway 222 in Stonycreek Township. The plan authorizing the paving and widening was approved by the Governor on June 7, 1950, and was filed on the same day in the office of the Recorder of Deeds of the County. The Commonwealth later entered upon the land and did the work.

Appellants, husband and wife, own property abutting on the highway, as do the owners of five other parcels. The owners of these six lots acquired title before 1950 but after the date of an earlier plan to reconstruct the highway, which had been approved by the Governor on March 19, 1924. The owners of three other abutting

parcels acquired title before March 19, 1924. The owners of all nine lots held title on June 7, 1950.

The highway became part of the State system by virtue of the Sproul Act: May 31, 1911, P.L. 468, 36 P.S. §1194. Section 8 of this Act (36 P.S. §61) provided that where a highway was dangerous or inconvenient the Commissioner of Highways could divert it by a plan approved by the Governor: this plan need be filed only in the Department of Highways in Harrisburg.

An amendment (Act of April 6, 1921, P.L. 107, 36 PS §61) provided that where a highway was to be widened without divergence or where widths and lines were to be established for the future highway, the plan should also be recorded in the County where the road lay. This amendment was needed because the original Act of 1911 made no provision for widening an existing State highway: see *In the Matter of Appointment of Viewers,* 103 Pa. Superior Ct. 212 (1931), 158 A. 296.

The facts appear in the following excerpt from the opinion of Judge McDONALD, of the court below: "At the hearing it developed that State Highway Route 222 was formerly part of the Bedford-Scalp Level Turnpike taken over by the Commonwealth. The original right-of-way was forty feet, part of which had been constructed of macadam. The plans for reconstruction of said highway as approved . . . by the Governor of Pennsylvania on March 19th, 1924, prints of which were introduced in evidence, were filed in the office of the Department of Highways in Harrisburg. According to these plans, the highway was reconstructed of concrete for a distance of 7,302.6 feet, on part of which the properties of petitioners abutted. The paved portion of the road was not widened over its original width and was completely within the original right-of-way, referred to on the plans as 'Legal Width of Right of Way,' except at the 'William Schrader' property where

a curve was eliminated. The Schrader property is sixteen hundred feet from the property line of any petitioner. The plans also show a line, ten feet on each side of the original right-of-way and parallel thereto, referred to as 'Required Width of Right of Way'. Thus the total 'Required Width of Right of Way' is sixty feet. While there was a marked deviation of the reconstructed highway from the original road bed at the Schrader property, the deviation from the original center line of the turnpike abutting the properties of petitioners varied from three feet to one-half foot and at times the new and old center line coincided. Since the highway was reconstructed in the original road bed and at no point (except the Schrader property), considering the combined width of pavement and shoulders, exceeded the original right-of-way width, we may assume this minimal deviation from the original center line would have been difficult to detect other than by survey or expert examination of the plans. No physical entry was made on the additional ten feet width above referred to as within the line of the 'Required Width of Right of Way'.

"The Department also submitted in evidence a plan prepared by the Office of the District Engineer showing the original turnpike right-of-way, the reconstruction of 1924 . . . and the widening of the highway under the 1950 plans. This last mentioned widening was within the lines of the right-of-way referred to above on the 1924 plans as 'Required Width of Right of Way'."

No actual notice of the deflection in the center line was given. The plan was not recorded in Cambria County. No compensation was paid or secured under Section 16 of the Act of 1911, providing for damages from divergence.

Under these facts the Commonwealth contends that the condemnation occurred on March 19, 1924; that

under the Statute of Limitations (Act of June 11, 1935, P.L. 302, 12 PS §43) petitions to assess damages must be filed within six years after approval of the plan by the Governor "but not thereafter"; and that since appellants' petition was not filed until 1955 it was untimely. Appellants contend that the condemnation occurred on June 7, 1950, when the plan was approved by the Governor, and that their petition to assess damages was filed in 1955 and hence was within the Limitation.

The court below held that condemnation occurred on March 19, 1924; that the Statute was tolled, as to the claims of those who owned their land on that date, until notice by recording was given as of June 7, 1950; that the Statute was not tolled as to those who acquired their land after March 19, 1924, because no right to damages had been preserved in their deeds; and hence that the claim of appellants, who were in the second category, must fail.

The right of all owners bases on the Constitution of Pennsylvania, Article I, Sections 9 and 10, having to do with due process and with "just compensation being first made or secured" under authority of law for the public taking of private property.

The precedents make clear distinction between cases of divergence, whether or not there is also a widening, in which case the Governor-approved plan need be filed only in the Department in Harrisburg, and cases of widening without divergence and of establishing widths and lines, in both of which latter types of case the plan must also be filed in the appropriate County. In *Commonwealth v. Pardee Brothers,* 310 Pa. 353 (1933), 165 A. 396, we said, speaking of the Act of 1911: "The first paragraph of that section expressly provides that the secretary of highways may divert the course or direction of any part of a state highway, provided he first submits a plan of the proposed change to the governor and procures his approval thereof. The act

does not require the plan to be recorded in the county or to be filed anywhere except in the department of highways: May v. Westmoreland Co., 98 Pa. Superior Ct. 488. . . .

"Whether the new portion of the highway is wider or narrower than the old part, or of the same width, can make no difference; it still remains a divergence. There is nothing in the first paragraph of the section [8 of the Sproul Act] which requires a divergence to be of the same width as the old road."

In *Eshleman v. Commonwealth*, 325 Pa. 521 (1937), 189 A. 340, we said: "The mere fact that the new part of the highway was a widening does not prevent the deflection in the center line from being a divergence within the meaning of the Act of 1911." And in *Matter of Appointment of Viewers*, supra (103 Pa. Superior Ct. 212), Judge KELLER said that, by the Act of 1921, ". . . a description and plan of the width and lines, so established, whether its actual widening is contemplated, or only the fixing of its ultimate width, is to be made by the Secretary of Highways and acknowledged by him, after being approved by the Governor, and such description, plan and acknowledgment must be recorded in the office of the recorder of deeds of the proper county, in a separate book kept for that purpose: Penn Builders, Inc. v. Blair County, 302 Pa. 300. . . ."

Since there is no dispute that the plan of reconstruction of Highway 222 in 1924 involved a divergence, it is clear that it did not have to be recorded in Cambria County.

We are also of opinion that the court below was correct in tolling the Statute of Limitations as to those who owned their land before March 19, 1924. We feel, however, that those who took title after that date and still held it on June 7, 1950, are in no different case. We held in *Angle v. Commonwealth*, 396 Pa. 514 (1959),

153 A. 2d 912, and the Superior Court held in *Pagni v. Commonwealth*, 179 Pa. Superior Ct. 213 (1955), 116 A. 2d 294, that filing a Governor-approved plan in the county where the road lies is constructive notice of condemnation to the landowner who buys his property after the plan has been filed in the county, and that filing it only in the department in Harrisburg is no notice at all: nor is it notice to successors in title.

We are of opinion that the constitutional requirement of just compensation outweighs the Statute of Limitations in this type of case and requires actual notice such as entry on the land or the giving of a bond to the landowner. In *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), 70 S. Ct. 652, notice by publication of the filing of a trustee's account in accordance with the State Banking Law was held not to be due process. Mr. Justice JACKSON said: " 'The fundamental requisite of due process of law is the opportunity to be heard' (citing cases). This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest."

We agree with Judge ROSS of the Superior Court when he said, in *Pagni*: "Certainly, here, no notice is not 'reasonable' notice . . . Appellees' inaction could not have been unreasonable when they had no knowledge that they had any right which was to be enforced. They were entitled to a notice of some kind, whether it be actual or constructive, whether it be given by the beginning of actual work on the property within a reasonable time after approval of the plans, or whether it be given by the statutory requirement of recording the future plans. The State cannot take advantage of one of the powers given it by the Constitution and at the same time disregard another provision, Art. I, sec. 9 of the Pennsylvania Constitution, which prohibits

the taking of a man's property except by the law of the land or due process."

It is true that the Act of 1911, as amended, contains no express provision for notice to an affected land-owner, but does contain, in Section 16, a provision which impliedly contemplates such notice. This omission proves nothing except the rule of *Mullane,* that notice and hearing are always an indispensable part of due process: *Angle v. Commonwealth,* supra (396 Pa. 514); *Hess v. Westerwick,* 366 Pa. 90 (1950), 76 A. 2d 745. It was therefore proper to toll the Statute until the State first gave legal notice.

A limitation upon an owner's right to claim damages in condemnation cannot begin to run until he has had notice, actual or constructive, that his property has been condemned.

We agree with the court below that the minor deflection of the center line in 1924, when the entire operation was done within the right of way, was not effective actual notice.

The petitioners relied upon good record title when they purchased their land. Nothing had been filed in the office of the Recorder of Deeds of Cambria County, or in any other County office, to give them constructive notice of the Commonwealth's claim to the land. The Commonwealth was not in possession. The highway itself, of course, was in plain view, bordering the property which the appellants were buying, but this property, for which they now claim damages, was not being used for a highway, and, according to their petition, was land-scaped and protected by a stone wall with cut stone coping, and with stone steps and sidewalks which led to dwellings; and the taking of their land in 1950 resulted in the total destruction of the stone wall and steps and sidewalks.

Since it is agreed that no payment was either made or secured, as by bond, and since there was no notice,

we hold that the rights of all of the property owners accrued from the date when the Commonwealth gave notice by entry that it would widen the highway to the limit of the lines in the 1924 plan.

The condemnation of March 19, 1924, was invalid because it failed to give or secure payment as required by Article I, Section 10, of the Constitution, and because it failed to give notice in accordance with Section 16 of the Sproul Act.

We held in *Rosenblatt v. Pennsylvania Turnpike Commission,* 398 Pa. 111 (1959), 157 A. 2d 182, that a landowner may either sue in ejectment or treat an allegedly defective condemnation as valid and ask for a Board of View, and that his election is irrevocable. Appellants followed the latter course.

All those owning abutting property on June 7, 1950 are entitled to damages, and we see no reason to distinguish between those who owned their land before 1924 and those who acquired title after 1924 and before 1950. Those who may have bought and sold abutting land between those dates are presumed to have received and given full value for their purchase, unaffected by the condemnation of 1924 because the public had no legal notice of it.

Since the appellants are of the group that acquired title after 1924, it is necessary to reverse the order and remand the record for further proceedings consonant with this opinion.

It is so ordered.